(No. 41643.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* CURTIS A. SMITH, JR., Appellant.

*Opinion filed May 28, 1969.*

WARD, J., took no part.

STANLEY A. BASS, of Chicago, appointed by the court, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE, and MICHAEL D. STEVENSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Curtis Smith filed a *pro se* petition in the circuit court of Cook County pursuant to the Post-Conviction Hearing Act (Ill. Rev. Stat. 1965, ch. 38, art. 122) alleging certain infirmities in his convictions upon pleas of guilty to 6 indictments charging him with 2 rapes, 2 robberies and 2 assaults with intent to commit rape. The State's motion to dismiss that petition was allowed, and the case appealed here. We reversed and remanded (*People* v. *Smith,* 37 Ill.2d 622) for a new hearing in order that petitioner might be represented by counsel other than the public defender (petitioner had alleged incompetence on the part of the assistant public defender who represented him originally, and the public defender had also been appointed to represent him in the post-conviction proceedings, thus presenting a conflict of interests.) On remand, the court appointed counsel accordingly, and an amended petition was then filed. Following an

evidentiary hearing at which the petitioner (hereafter called defendant) was not present, the court denied the amended petition. The propriety of that denial is the issue now before us.

Defendant was indicted for the 6 offenses in October, 1959, and assistant Public Defender Ralph Brown was assigned to represent him. On November 16, the court, on motion of the public defender, ordered a mental examination of defendant. Dr. Haines of the Behavior Clinic of the Criminal Court of Cook County submitted his report to the court on December 14, summarizing his diagnosis as follows: "Schizoid personality make-up. He knows the nature of the charge and is able to cooperate with his counsel." The report contained no expression of opinion as to defendant's mental condition at the time of the commission of the offenses. On March 21, 1960, Brown requested a 90-day continuance of the proceedings "in order to secure psychiatric results in order to prepare a proper defense in this cause." He stated that the defense had made an effort to engage psychiatric consultants, but that effort was unsuccessful. One reason for the lack of success was inability to assure the psychiatrist a fee. Counsel indicated that a petition would be presented asking the court to enter an order providing for payment of consultant's fees. The trial court granted a continuance until April 25, 1960. Although defense counsel had prepared a "petition for appointment of psychiatrists", it was never presented to the court nor was there ever an actual request for public payment of private psychiatric fees nor a ruling thereon. On April 25, 1960, the defendant, represented by Brown, withdrew his plea of not guilty, entered a plea of guilty to all 6 offenses and was sentenced to 35 years imprisonment. In response to the court's questioning and admonitions prior to acceptance of the guilty plea, defendant twice indicated his satisfaction with the services of the attorney he now argues was incompetent.

Defendant now contends he was denied equal protection of the laws by a combination of the failure of the State to provide a private psychiatrist, the appointment of a public agency as defense counsel and the disinclination of defense counsel to litigate defendant's constitutional right to private psychiatric assistance, thereby depriving him of any opportunity to prepare an insanity defense and causing him to change his previously entered plea of not guilty to guilty.

Attorney Brown testified at the post-conviction hearing that, although he did not have a *bona fide* doubt as to defendant's sanity, he attempted to raise that issue in order to aid in plea negotiations because there was no other defense available. He further stated he believed there was a good chance that an independent psychiatrist would determine defendant had been sane at the time of the offenses. Nevertheless, had he been a private lawyer in private practice representing a client with adequate funds, he would have hired private psychiatrists to examine his client in order to investigate the possibility of an insanity defense, since he could have done so "in camera" and, when the psychiatric reports were sought by the prosecution, he could have urged they were privileged from discovery as his "work product". However, he stated, the public defender's office had no funds to employ a private psychiatrist nor was he certain that psychiatric reports obtained by a public agency would be exempt from discovery. If he requested the court to appoint a psychiatrist, the prosecution would learn of this, and if, as he expected, the psychiatrist determined defendant to be sane, that testimony could be used against defendant. By suggesting the possibility of this defense without actually petitioning for authorization, defense counsel was able to bargain for a reduced sentence during the pendency of the petition, without ever formally presenting it, since the State had to assess the possibility that independent psychiatrists might determine that the defendant was, in their opinion, not sane when the offenses were com-

mitted. Attorney Brown's decision not to present the petition for the appointment of consultants was reached, in part, because the State, which had apparently originally favored successive life sentences, changed position after the defense indication of a possible insanity defense and finally agreed to recommend the 35-year sentence in the event defendant pleaded guilty to the 6 offenses. This offer was presented to defendant who agreed to it following a discussion with counsel in which he was advised that if he continued a not guilty plea and was found guilty he probably would be sentenced to an extended period of years in the penitentiary.

The essence of defendant's argument here is that he was motivated by two factors to enter a plea of guilty. The first was his desire to secure the least punishment possible; the second was the fact that his only possible defense—insanity—was unavailable because he had no funds to hire a private psychiatrist and the assumption that a public defender could not preserve the secrecy of the results of a psychiatric examination if there were funds. Defendant argues the second factor is a denial of equal protection and, to the extent that it induced the plea, coercion is present. He also urges that he believed more severe punishment would be forthcoming if he stood trial and was convicted, and it seems clear that he was advised by his attorney that this would probably result, a prediction which was apparently accurate in view of the comment of the trial judge that he probably would have imposed lengthier sentences had it not been for the State's recommendation. It is also worth noting, that had the cases been tried before a jury, that body would have fixed the punishment, and attorney Brown testified that his observations and experience indicated trials in cases of this nature frequently resulted in severe sentences.

We cannot, however, accept this argument. It must fail, insofar as it is premised upon the unavailability of private psychiatric consultation, for the reason that the question whether an indigent defendant is constitutionally entitled

to the services of private psychiatrists at State expense is not before us. There was neither an unequivocal request for allowance of fees for this purpose (*People* v. *Bracy*, 38 Ill.2d 358) nor a ruling by the trial court, and we have repeatedly refused to consider issues not ruled upon by the lower court. *People* v. *Hanna*, 42 Ill.2d 323; *People* v. *Eldredge*, 41 Ill.2d 520, 528; *City of Chicago* v. *Joyce*, 38 Ill.2d 368, 371-72.

It is suggested that failure of defense counsel to secure a ruling by the trial court on the right to free, private, psychiatric consultation constituted incompetency. Rather than showing a substantial denial of constitutional right, however, these facts seem to us to establish that defendant was represented by a dedicated advocate. Attorney Brown had recently won 14 consecutive acquittals of defendants in capital cases and other felonies, and was known to both the bench and criminal defendants as a conscientious and effective defense lawyer. Also, as noted in his testimony, these events occurred some 9 years prior to many of the United States Supreme Court decisions extending the rights of defendants in criminal cases, and there was little reason to anticipate his petitions for free, private, psychiatric assistance would have been allowed. The defendant had available to him the services of a public agency, the Behavior Clinic, and neither the competency nor integrity of its staff are here challenged. No suggestion is made that a report of its staff would be other than truthful and the reason such facilities were undesirable was a fear that the truth may have been unfavorable to defendant's only possible defense. (See *People* v. *Nash*, 36 Ill.2d 275, 282; *People* v. *Myers*, 35 Ill.2d 311.) Our system of criminal justice operates with a goal of seeking the truth and making dispositions on that basis.

Counsel's use of his oral representation that psychiatric examination would be sought was for purposes of bargain-

ing to obtain a reduced sentence in exchange for a plea of guilty. Counsel did not want the psychiatrist's report at the expense of its exposure and for this reason did not seek a Behavior Clinic examination; he drafted and mentioned the petition primarily to create an illusion that reports were desired because they were expected to support an insanity defense. His purpose was achieved in that the State agreed to recommend a sentence apparently substantially less than that which would otherwise have been imposed. Instead of showing incompetency, there is in our judgment substantial indication that the trial strategy here used in representing defendant was not, under the circumstances, indicative of incompetence.

Defendant also contends that the judge abused his discretion in refusing to order him brought before the court to testify in support of the allegations in the petition. In addition to the allegation that defendant was informed a trial would produce a more severe sentence, it is alleged that he was forced to plead guilty by coerced confessions obtained from him after beatings by the police. As earlier noted, it seems clear that a heavier sentence in the event of a trial and finding of guilty would have been a distinct possibility, for defendant would not have had the benefit of the State's recommendation. But the fact that the results of a trial may be unknown, whereas the State's recommendation on a plea of guilty is known, cannot alone invalidate an informed decision to choose what is almost certainly the lesser. Defendant's guilt of these heinous offenses was conclusively established. He was competently represented by experienced and able counsel and made a deliberate choice based upon an analysis of the alternatives available to him. We cannot agree that a defendant's fear that the result of a jury trial may be less favorable *per se* invalidates such choice. See *People* v. *Eldredge,* 41 Ill.2d 520.

The allegation that his confession was the product of

beatings by the police seems clearly an afterthought on defendant's part. Although it is also alleged that the defendant told attorney Brown of the beatings, the latter testified that defendant told him that the confessions were volunary, and that he never mentioned being beaten or mistreated by the police. In fact, counsel did not consider moving to suppress the confessions because there was nothing in defendants' statements to his attorney which indicated any coercion whatever. The pleas of guilty were entered more than 6 months after his confessions, and only after numerous meetings with his attorney. (See *People* v. *Thomas*, 41 Ill.2d 122, 124.) It seems incredible that any fact-finder would believe defendant if he now testified in support of the allegations of police brutality, and defendant's testimony would have been of little, if any, value at the hearing. It was not an abuse of discretion to deny his request to be present. *People* v. *Ashley*, 34 Ill.2d 402, 412.

Defendant's final contention is that the trial judge abused his discretion in declining to disqualify himself from hearing this post-conviction petition. In support of this claim it is alleged that the same judge could not now properly determine the propriety of his earlier denial of defendant's request for a 90-day continuance, and that allowance of only a 30-day extension effectively deprived defendant of his constitutional right of access to psychiatric services. There is nothing suggested to indicate any support in the record for this position. It is quite apparent that defendant's counsel had no intention of pursuing his quest for private psychiatric services. In response to a question whether "denial of the last [90-day] continuance" deterred him from "fulfilling [his] attorney relationship to that defendant", he testified: "No, the basic conversation and the basic desire was achieved; namely, the State, I might say, capitulated and agreed to reduce their recommendation to the absolute minimum, considering the gravity of the offenses and the number of offenses involved."

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.