THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD JOHNSON, Defendant-Appellant.

Third District   No. 75-307

Opinion filed September 22, 1977.—Rehearing denied October 31, 1977.

TRAPP, J., dissenting.

Robert Agostinelli and Mary Robinson, both of State Appellate Defender's Office, of Ottawa, for appellant.

Carl E. Hawkinson, State's Attorney, of Galesburg (James E. Hinterlong and Robert Hansen, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE MILLS delivered the opinion of the court:

Can a recantation be recanted?

Can an "eyeball" witness twice repudiate, cancel out the recanted testimony by yet another retraction, and thus destroy his veracity as a means of disproving his original convicting evidence?

We say yes.

And we affirm.

At the trial of Ronald Johnson, Earl Stewart testified that on July 18, 1973, he saw Isaac Johnson and the defendant at an establishment known as the Scoreboard. Isaac, who is the defendant's brother, asked Stewart if he wanted to buy some LSD. When Stewart asked to see the merchandise, Isaac directed him to the defendant. The defendant showed Stewart a white piece of paper with 30 purple dots on it. Stewart then left the Scoreboard, went to the police station and talked with Detective Spivey. After searching him, the detective gave him $30 to buy the LSD. Upon returning to the Scoreboard, Stewart in turn gave the money to Isaac. The defendant then gave Stewart 15 dots of LSD outside of and behind the Scoreboard as Detective Spivey and Sergeant Sergeant, who had followed Stewart, looked on from a distance.

On June 19, 1974, a jury found Ronald Johnson guilty of delivery of less than 30 grams of a substance containing lysergic acid. The defendant filed a motion for a new trial on July 19, 1974, alleging newly discovered evidence consisting of a statement by one Gary Reading. Reading stated Earl Stewart told him in a bar on the evening of June 19, 1974, that he had made a deal with the police allowing him to stay out of jail if he testified against Ronald Johnson, although he never saw any drugs change hands on the day in question. After a hearing, the motion for a new trial was denied. No direct appeal was taken.

Then on February 19, 1975, the defendant filed a petition for post-conviction relief. In the petition, the defendant alleged his conviction resulted from the perjured testimony of Earl Stewart, induced by threats and promises of the police. An affidavit, given by Stewart on December 2, 1974, in support of the petition, stated Detective Spivey threatened to shoot him if he did not cooperate, and also threatened to have him put in jail for 20 years if he did not testify against Ronald Johnson.

In its answer and motion to dismiss the post-conviction petition, the State claimed that on December 8, 1974, Stewart informed the police that he had told defendant's attorney that his trial testimony had been a lie. Stewart stated that since he had come back to town he had been in a fight, or beaten up, every weekend. While in a hospital with a broken rib suffered in one of these altercations, the defendant's brother, Isaac Johnson, told Stewart he would have his boys "lay off" if he would tell defendant's attorney he had lied at the trial. Stewart reiterated to the assistant State's Attorney and later the defendant's attorney that his recantation of his trial testimony was induced by physical and mental distress and fear of Isaac Johnson. He stated that the testimony he gave at the trial was true.

After hearing the arguments of counsel and taking the matter under consideration, the judge dismissed the petition for post-conviction hearing. The defendant claims that the dismissal of the petition alleging knowing use of perjured testimony without an evidentiary hearing was erroneous.

Such a practice—if true—would simply be fundamentally unfair, and violative of the rawest of due process. The Post-Conviction Hearing Act (Ill. Rev. Stat. 1975, ch. 38, pars. 122—1, 122—7) provides remedy for an improperly convicted defendant. (*People v. Martin* (1970), 46 Ill. 2d 565, 264 N.E.2d 147.) Upon the filing of the petition alleging a substantial violation of petitioner's constitutional rights, the State may answer or file a motion to dismiss the petition. Ill. Rev. Stat. 1975, ch. 38, par. 122—5.

■■ Now, it is the function of the pleadings to determine whether the petitioner is entitled to an evidentiary hearing. (*People v. Clements* (1967), 38 Ill. 2d 213, 230 N.E.2d 185; *People v. Airmers* (1966) 34 Ill. 2d 222, 215 N.E.2d 225.) When the claim creates conflicting representations beyond the record, evidence should be taken. (*People v. Sigafus* (1968), 39 Ill. 2d 68, 233 N.E.2d 386.) However, the petitioner is not entitled to a hearing as a matter of right. The orderly and expeditious disposition of these petitions necessitates the dismissal of non-meritorious ones. (*People v. Farley* (1976), 37 Ill. App. 3d 178, 345 N.E.2d 724.) For the purposes of the motion to dismiss, the petition is basically taken as true. The motion only questions the sufficiency of the allegations. (*People v. Wilson* (1968), 39 Ill. 2d 275, 235 N.E.2d 561; *People v. Funches* (1972), 9 Ill. App. 3d 372, 292 N.E.2d 187.) The pleadings are generally not intended to resolve constitutional claims.

■■ Although the judge must not weigh the credibility of the constitutional claim in ruling on the motion to dismiss, he is given wide discretion as to the evidence he receives in ruling on the petition. In *People v. Humphrey* (1970), 46 Ill. 2d 88, 92, 263 N.E.2d 77, 79, the supreme court held that the trial judge did not abuse his discretion "in ruling on the allegations of the petition based on the petition, written statement, answer and trial transcript without the oral testimony of the defendant and the informer."

In *People v. Smith* (1969), 42 Ill. 2d 547, 248 N.E.2d 85, the judge refused to order the defendant brought before the court to testify in support of his petition for post-conviction relief. In the petition the defendant alleged his confession was the product of police beatings. He claimed he told his attorney of the beatings though the latter testified that the defendant told him the confessions were voluntary and never mentioned police abuse. Again, the supreme court held that it was not an abuse of discretion to deny defendant's personal presence stating: "It

seems incredible that any fact-finder would believe defendant if he now testified in support of the allegations of police brutality, and defendant's testimony would have been of little, if any, value at the hearing." (42 Ill. 2d 547, 554, 248 N.E.2d 85, 89.) There was a similar finding in *People v. McCarroll* (1973), 10 Ill. App. 3d 249, 294 N.E.2d 52. While recognizing that the petition normally would have required an evidentiary hearing, the court held one was not required because it would have added no significant information.

In making the determination of the value of Stewart's testimony there must be a consideration of the totality of the record. In this case Stewart's trial testimony that Ronald Johnson delivered LSD to him was supported by the police account of the exchange. At the hearing for a new trial based on the allegation that Stewart's testimony was perjured, the trial judge decided there was no perjury. Next in the scenario of events came the petition for post-conviction relief with an affidavit by Stewart saying his testimony was perjured. This was followed by an undenied answer stating Stewart's recantation had been coerced and that his trial testimony was true. A copy of the letter sent to the defendant's attorney stating this was attached to the answer. To this there was no reply, no denial, no rejoinder.

■■ In *People v. Bickham* (1974), 23 Ill. App. 3d 1074, 1078, 320 N.E.2d 478, 481, the court noted that: "Recanting testimony is regarded as very unreliable, especially where the recantation involves a confession of perjury." In the present case, not only is there a recantation, but there is also a recantation of the recantation. These incredible circumstances demonstrate that Stewart's testimony would be of little value at an evidentiary hearing.

Judgment affirmed.

GREEN, J., concurs.

Mr. JUSTICE TRAPP, dissenting:

Upon this record I must conclude that it was error to dismiss the post-conviction petition without an evidentiary hearing. The trial court undertook to make a determination of the controlling fact of perjury of the witness, Stewart, without the defendant having had the benefit of cross-examination of the witness. The right to confront and cross-examine a witness is particularly significant and essential where the fact at issue must be decided upon the conflict between the affidavit made to the petitioner and the unsworn statement of the same witness made to the State's Attorney.

The fact that petitioner did not make a written denial of the allegations

of the motion to dismiss does not resolve the conflict of fact. The fact that Stewart made conflicting statements is not the true issue.

The fact that the trial court found that the testimony of Reading given at the post-trial hearing was not sufficient to establish perjury of Stewart is not *res judicata* of the issue of perjury found in Stewart's affidavit filed with the defendant's petition.

I would reverse and remand with directions to hold an evidentiary hearing.