THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KENNY McCARROLL, Defendant-Appellant.

(Nos. 57079-80;

First District (3rd Division)—February 15, 1973.

Michael P. Toomin, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, and Edward V. Hanrahan, State's Attorney, of Chicago, (Mark T. Zubor, Assistant State's Attorney, of counsel,) for the People.

Mr. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court:

A jury found the defendant, Kenny McCarroll, guilty of deviate sexual assault. (Ill. Rev. Stat. 1965, ch. 38, par. 11—3.) His motion for a new trial was denied and he was sentenced to the penitentiary for a term of five to seven years.

An appeal was taken to the Supreme Court. During the pendency of the appeal, McCarroll filed a post-conviction petition which was dismissed without an evidentiary hearing. The dismissal was also appealed. The two appeals were consolidated and transferred to our court.

The complainant, a college student, was walking home from a bus stop on an early evening in November 1967. Two blocks from her home she noticed a tall black man standing in a gangway two or three feet from the sidewalk; he was wearing a blue jacket and a knit hat. Shortly afterwards, she was attacked from behind; the assailant covered her mouth, put a knife at her throat and demanded her money. From there, about six feet from a street light, the man dragged her into a back yard which was illuminated by a bright alley light several houses away. After tying her hands behind her back with one of her stockings and putting a rag in her mouth, the assailant removed her undergarments, spread her legs apart and put his mouth to her vulva.

Twenty minutes later he tied her feet together and left. He came back with an automobile and lifted her into the trunk. There were holes in the trunk and she saw street lights and signs as she was transported to a brightly lit garage. While she was still in the luggage compartment, he covered her face with masking tape. He then placed her on the garage floor and, despite the fact that she was menstruating, performed another cunnilingus act.

The assailant said he was going to take pictures of her. He posed her lower body and legs in various positions, and she heard the clicks of a camera. She also heard a phone ringing in the garage. They remained in the garage about 25 minutes. He became concerned because her shoes had been left in the yard and was afraid someone would find them. He placed her in the back seat of the auto, drove to the area of the first assault, walked her to an alley and told her to wait. He returned with her shoes, books and purse.

He removed the tape from her face, told her to keep her eyes closed, thanked her for her trouble, tried to give her a five-dollar bill and left after saying that he would see that she got home safely. As she ran home, she noticed a blue Chevrolet—the car used in the abduction—drive by. The police responded to her telephone call and she described her assailant as a tall, Negro man, about five feet ten inches to six feet in height, weighing about 180 pounds, and wearing a blue coat and knit hat. She described the automobile as an old, 1953 to 1956, blue Chevrolet with holes cut out of the rear deck near the trunk.

Twelve days after the abduction, a police officer who was patrolling in a blue and white squad car, received information about a man sitting in a 1956 Chevrolet in the area of the crime. He broadcast the information over his radio. When he arrived in the vicinity he saw McCarroll, who fit the complainant's description, walking on a sidewalk. He parked his car and got out. McCarroll saw the squad car and the uniformed officer and started to run. The officer chased him. McCarroll ran three-

quarters of a block, turned into a gangway, ran down an alley into another gangway and disappeared from the pursuing officer's view. The officer saw him again some 20 minutes later at a police station.

McCarroll had been arrested in his automobile while it was stopped for a traffic signal. The arresting officers, who were aware of the complainant's descriptions of her assailant and his car, responded to the radio message; they drove to the neighborhood, saw the auto which matched the description and, with their guns drawn, ordered the driver to get out. A bone-handled, razor type knife was found in his pocket. An officer who drove McCarroll's auto to the police station noticed a picture of a partially nude woman above the visor. At the station, McCarroll denied committing the offense but when he was confronted with the picture he confessed. The complainant was called to the station and she picked him out of a three-man lineup. In the meantime, officers had been sent to search a garage to which he had a key. They returned with a camera, which he said was his, and three more pictures. After the lineup the complainant was shown the pictures. She did not recognize the one found in the auto but she did the three recovered from the garage. The pictures did not include facial views but she was able to identify herself from the lining of her coat which was visible in the pictures and from the string of a menstrual absorbent which protruded from the vagina of the exposed woman.

Prior to trial, a hearing was held on the defendant's motion to suppress the articles taken from his person, auto and garage, and to suppress his oral admissions of guilt. It was contended in his written motion that his statements and the seizure of his property were the consequences of an invalid arrest and illegal detention. It was contended orally during the hearing that he had not been adequately informed of his constitutional rights and that his confession had been induced by fear and police brutality. The officers who participated in his chase and arrest and those who were present at his confession, denied his contentions and testified as to what was done and said. The motion was denied.

At the trial the complainant identified McCarroll as the man who attacked her. She testified that when she first saw him in the gangway she observed his face but did not notice anything particular about it. She raised her head and glanced at his face several times while the cunnilingus took place in the back yard. She saw it again when he removed the tape from her eyes. She was adamant that the lighting conditions were adequate for her to see his face and she was positive he was her assailant. The police related the circumstances of his arrest and their conversations with him. The knife taken from his person, pictures of his auto, the three pictures and the camera found in the garage, and the

complainant's coat were received in evidence. McCarroll denied the offense. He testified he had two jobs one of which was repairing automobiles in another garage and that he was working there the evening of the crime. The owner of the garage and a customer corroborated his whereabouts. The defendant's wife and a friend testified they telephoned him at the garage several times that evening.

The defendant contends on appeal that: (1) his guilt was not established beyond a reasonable doubt; (2) articles taken from his person and his automobile, his admissions of guilt and his identification were the products of an illegal arrest; (3) the identification procedures used by the police were suggestive and tainted his in-court identification; (4) evidence seized without a search warrant from his garage should have been suppressed; (5) he was denied due process of law by the suppression of favorable evidence and (6), his constitutional right to confront witnesses was abridged by the State's refusal to produce a prior statement of the complaining witness which contradicted her trial testimony.

■■ The defendant's brief makes no distinction between the appeal from his conviction and the appeal from the dismissal of his post-conviction petition. Issues properly related to one are argued interchangeably with issues germane to the other. Furthermore, an issue is argued which was not raised either at the trial or in the petition, and an item of evidence extraneous to the trial record is advanced as a factor to be considered in determining guilt or innocence. We reject the defendant's thesis that in a consolidated appeal such as this, trial and post-conviction issues can be indiscriminately commingled and that issues neither preserved at the trial nor raised in the petition can be intertwined with those that were. We will, therefore, consider the appeals separately (as was done in *People v. Moore* (1969), 42 Ill.2d 73, 246 N.E.2d 299), and will start with the direct appeal.

■■ In a direct appeal review is limited to what appears in the trial record. (*People v. Jackson* (1963), 28 Ill.2d 37, 190 N.E.2d 823.) In this appeal the issues are further restricted to those presented by the defendant in his written motion for a new trial. (*People v. Landry* (1970), 123 Ill.App.2d 86, 259 N.E.2d 604.) The defendant was ably represented before and during his trial by a privately retained attorney who filed in his behalf a motion for a new trial. The principal points made in the motion were that the defendant was not proved guilty beyond a reasonable doubt and that his statements and admissions should not have been received in evidence because they were obtained in violation of his constitutional rights as set forth in the *Miranda* and *Escobedo* cases. *Miranda v. Arizona* (1966), 384 U.S. 436; *Escobedo v. Illinois* (1964), 378 U.S. 478. The latter point is not repeated in this appeal. Instead, it is again

contended, as it was in the motion to suppress, that his statements and admissions of guilt were erroneously received in evidence because they were the products of an illegal arrest. This contention was not included in the motion for a new trial nor, likewise, were the corollary contentions that the articles taken from his person and auto and his in-court identification should have been denied admission into evidence because they too were the products of an invalid arrest.

■■ Two of the issues attempted to be argued on appeal—the alleged suggestive identification procedures and the search of the garage without a warrant—were not presented to the trial court at any time or in any form. The others were resolved adversely to the defendant. Those which were presented were decided correctly; those which were not presented were waived. All the issues are constitutionally premised, but a thorough examination of the full record discloses that the defendant's rights were not abridged by any of the alleged constitutional violations. We find no reason, therefore, to take notice of the issues as substantial errors prejudicially affecting the rights of the accused. Ill. Rev. Stat. 1967, ch. 110A, par. 615(a).

■■ When a written motion for a new trial is presented to the trial court, the extent of review on appeal is restricted to the issues set out in the motion and all the others are regarded as waived. (*People v. Irwin* (1965), 32 Ill.2d 441, 207 N.E.2d 76; *People v. Garner* (1972), 6 Ill.App.3d 1, 284 N.E.2d 440.) Thus, for the purpose of the direct appeal we will limit our consideration to the one issue in the defendant's motion for a new trial that is properly before this court: whether his guilt was proven beyond a reasonable doubt.

■■ This case does not, as the defendant suggested in the trial court, rest upon circumstantial evidence and it does not, as the defendant suggests in this court, rest upon identification. Nor does it depend, as the defendant strenuously argues, upon the weighing of a questionable identification against a solid alibi. The complainant's firm identification was but one factor in the trial. The other evidence introduced by the State cannot be overlooked: McCarroll's presence at the same hour and in the same neighborhood 12 days after the assault occurred; his flight when a policeman approached him; his physical characteristics which conformed to the complainant's description; his ownership of an automobile which matched the complainant's detailed description in color, make, vintage and unusual apertures; the identity of the clothing the complainant described and what he was wearing at the time of his arrest; the similarity of the distinctive knife the complainant saw at her throat and the one recovered from his pocket; his possession of a key to

the garage and of a bill made out in his name for a telephone at the address of the garage; the telephone there which corroborated the complainant's testimony that she heard one ringing; the camera there which corroborated her testimony that she had heard one clicking, and her pictures in the postures she said McCarroll arranged, found in the garage. This assemblage of incriminating circumstances was itself more than adequate to sustain the jury's verdict. When combined with the complainant's unwavering identification and the defendant's oral confession, the total proof overwhelmingly established the defendant's guilt. Insofar as the direct appeal is concerned, his conviction is affirmed.

■■■ We now turn to the second aspect of this opinion—the appeal from the dismissal of the defendant's post-conviction petition. The petition, in the main, represents an attempt to litigate issues which were not raised in the trial court or to relitigate those which were raised but not preserved in the motion for a new trial. Further judicial inquiry into these issues has been precluded by our decision in the direct appeal. Where an appeal is taken from a conviction, the judgment of the reviewing court is *res judicata* as to all issues actually raised, and those that could have been raised but were not are deemed waived. (*People v. French* (1970), 46 Ill.2d 104, 262 N.E.2d 901.) Although the waiver rule may be relaxed in instances when fundamental fairness requires (*People v. Hamby* (1968) 39 Ill.2d 290, 235 N.E.2d 572), we see no reason to do so in this case. The purpose of a post-conviction proceeding is not to determine a defendant's guilt or innocence, but is a new proceeding to inquire into the constitutional phases of his conviction which have not been adjudicated. *People v. Ashley* (1966), 34 Ill.2d 402, 216 N.E.2d 126.

The only issue of constitutional dimension which has not been adjudicated is the charge made in the post-conviction petition that the State suppressed material evidence favorable to the defendant by concealing the first description of him given by the complainant, the name of the officer to whom she gave the description and the officer's report containing the description.

Two policemen responded to the complainant's telephone call following her assault. The first to arrive at her home was James Wadlington, the second James O'Brien. Wadlington talked with her and left. He made a written report of the descriptions he received of her assailant and his car. He had nothing further to do with the case and his name did not appear on the list of the State's witnesses. Although he was summoned to the courtroom during the trial the State did not use him as a witness because he told the prosecutor that the report was not his. Officer O'Brien received more detailed descriptions from the complainant

but filed no written report. O'Brien was the officer who chased the defendant on the night he was arrested. His name was listed among the State's witnesses and, as we have seen, he testified at the hearing on the motion to suppress and at the trial.

A rape had taken place in the vicinity of the complainant's home the night before she was assaulted. The defendant was indicted for both offenses. The rape case came to trial 11 months after his conviction in the assault case. Wadlington, called as a defense witness, testified at a preliminary hearing on a motion to suppress evidence. He identified the report and acknowledged that he had written and signed it. The report was on a form composed of a grid with small boxes for the entry of pertinent information and a large space for a narrative description of the crime. The insertions in the boxes gave the offender's sex as M, his race as N and his age as 18-25. The boxes pertaining to the offender's vehicle bore the follow notations: 1954; chev.; blue; license number, unknown; other identifying marks, unknown. The officer concluded the narrative portion of his report with this sentence, "[The complainant] could not give a discription [sic] of this man other than he [sic] male Negro."

Wadlington's report was attached to the post-conviction petition. Also attached as exhibits were a transcript of a portion of O'Brien's testimony in the assault trial relating to the descriptions he had received from the complainant, and the list of State witnesses given to the defense in the assault case showing the omission of Wadlington's name.

It was contended in the post-conviction petition, at the hearing on the petition and is argued in this court that the differences between Wadlington's written report of the complainant's descriptions and her testimony and O'Brien's concerning them, would have discredited her testimony and O'Brien's, and would have undermined the basis of probable cause for the defendant's arrest. The differences are these: Wadlington's report listed the offender as a male Negro, 18 to 25 years old, and stated that the complainant was unable to describe him further. The complainant testified that her assailant was a black man, 5'10" or 6' tall, wearing a blue coat and a knit hat and that she gave this description to the police. O'Brien testified that this was the description he received from her and was the one transmitted to all the officers in the police district. Wadlington's report listed the offender's auto as a 1954, blue Chevrolet with other identifying marks unknown to the complainant. The complainant testified that the assailant's auto was a 1953 to 1956, blue Chevrolet, with holes in the rear deck, and that this was the description she gave the police. O'Brien testified that this was the description he received from her and the arresting officers said this was the descrip-

tion they acted upon when they approached the defendant's auto and placed him under arrest.

If Wadlington's name had been on the State's list of witnesses, the defense might have learned of his report; if the defense had been alerted to the report or if the State had disclosed it, it could have been used for impeachment purposes in the cross-examination of the complainant and O'Brien. In its motion to dismiss the post-conviction petition, the State conceded that the non-disclosure of the report was error, but argued that it was harmless error.

■■■ The proper focus at a hearing upon the State's motion to dismiss a post-conviction petition is the sufficiency of the petition's allegations and supporting documents. (*People v. Stepheny* (1970), 46 Ill.2d 153, 263 N.E.2d 83.) When the claim of a substantial denial of a constitutional right is based on assertions beyond the record, it is contemplated by the Post-Conviction Hearing Act that evidence be taken. (*People v. Williams* (1970), 47 Ill.2d 1, 264 N.E.2d 697.) The facts alleged in the instant petition and the inferences flowing from them would normally have required an evidentiary hearing, had not all the necessary information been supplied by the exhibits attached to the petition. The judge who conducted the post-conviction hearing had presided at the trial and had heard the motion to suppress. He read the exhibits and properly consulted his trial notes and the report of proceedings. (*People v. Morris* (1969), 43 Ill.2d 124, 251 N.E.2d 202.) An evidentiary hearing would have added no significant information. He had sufficient evidence before him to accurately determine whether the Wadlington report would have affected his ruling upon the validity of the defendant's arrest and upon the consequential issues concerning the admissibility of the defendant's statements and the seizure of his property. The judge also was in a position to evaluate the possible effectiveness of the report as an instrument of impeachment at the trial. He did not err in failing to conduct an evidentiary hearing or in dismissing the petition. In our opinion, the Wadlington report, even if used to its maximum effectiveness, would not have influenced the jury's verdict. The failure to furnish the report to the defendant if error, was, beyond a reasonable doubt, harmless error which did not contribute to the finding of guilty. *Chapman v. California,* 386 U.S. 18.

The testimony at the suppression hearing and at the trial established rather conclusively that the complainant, when interviewed by the police, gave definite descriptions of the assailant and his automobile and that both of these were more detailed than Wadlington reported. The combination of these descriptions and the similarity of the defendant and his auto afforded probable cause for his arrest. There is no doubt of the

identity of the defendant and the proof of his guilt is beyond question.

The judgment of conviction and the order dismissing the post-conviction petition are affirmed.

Judgment in the direct appeal affirmed.

Judgment in the post-conviction appeal affirmed.

McNAMARA and McGLOON, JJ., concur.