THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SALVADOR ORTIZ, Defendant-Appellant.

(Nos. 56006, 58785 cons.;

First District (3rd Division)—August 15, 1974.

Jackson H. Welch and Francis E. Andrew, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Lee T. Hettinger, Mary Ellen Dienes, and John Joseph O'Malley, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Defendant was charged with robbery. After a bench trial, he was found guilty of that charge and sentenced to a term of 2 to 10 years. During the pendency of his appeal to this court, he filed a post-conviction petition in the trial court, which was dismissed without an evidentiary hearing. Defendant has also appealed that order of dismissal, and we have granted his motion to consolidate the two appeals.

■■ Defendant's brief makes no distinction between the direct appeal from his conviction and the appeal from the order dismissing his post-conviction petition. As we stated in *People v. McCarroll* (1973), 10 Ill.App.3d 249, 294 N.E.2d 52, issues properly relating to one cannot be argued interchangeably with issues germane to the other. Thus we will consider the appeals separately.

On direct appeal, defendant argues that the evidence was insufficient to prove him guilty beyond a reasonable doubt; that he was denied his constitutional right to effective assistance of counsel; that the trial court erred in permitting a State's witness to testify in rebuttal; and that the trial court improperly considered irrelevant matters in determining defendant's sentence.

Mrs. Ruth Long testified that at approximately 7 A.M. on April 5, 1970, she was walking alone on her way to work. It was a bright morning and visibility was very good. As she approached 530 Arlington Place in the city of Chicago, she noticed a man walk out of a gangway about 10 to 15 feet ahead of her. She continued to walk as the man came to the sidewalk, turned, and began walking in her direction. As they were about to pass each other, the man grabbed her and clamped a hand over her mouth. They struggled face to face as the assailant attempted to take her purse. After Mrs. Long had managed to scream, her attacker knocked her to the ground. Her attempts to regain her feet were met by repeated kicks to her head and body. After some 60 to 90 seconds had elapsed, the attacker succeeded in snatching her purse and running away. The victim crawled to her nearby home and instructed her husband to call the police.

A couple of days after the robbery, Mrs. Long scanned several books of photographs at the police station, but did not see her assailant. On April 10 she returned to the station to look at more photos, at which time she selected defendant's photograph. Although she testified at trial that she was positive in her selection at that time, she stated that she asked the police at the second viewing to supply her with a more recent photograph of the same man. Sometime later the police gave her 15 pictures of both bearded and nonbearded men to view. Although he was clean shaven at the time of the robbery, she selected defendant's photograph from the group of bearded subjects.

On April 28 Mrs. Long viewed a five-man lineup at the police station, and again picked out defendant. She also identified defendant at trial. She testified that on the day of the attack defendant wore a brown jacket and blue or brown trousers, was hatless, did not wear eyeglasses, and bore a scar near one of his eyebrows.

The investigating police officer testified that Mrs. Long had viewed approximately 500 mugshots before she selected defendant's photograph. Nothing was done to influence the victim's several pretrial identifications of defendant.

Defendant, testifying in his own behalf, denied robbing Mrs. Long. He stated that he had been asleep at his parents' home from 1 or 2 A.M. to 10 or 11 A.M. on the day of the crime. His alibi was corroborated by his father, brother, cousin, and girl friend. Defendant denied ever having given a different version of his whereabouts at the time of the robbery.

In rebuttal, the investigating police officer testified that he asked defendant at the time of arrest where he had been on the night preceding the robbery. Over defendant's objection, the officer testified that defendant had said that he had attended a party at a friend's home until 4:30 or 5 A.M., and from there had gone to his girl friend's apartment. The girl friend's apartment was located two blocks from the scene of the robbery.

Defendant's initial contention on direct appeal is that he was not proved guilty beyond a reasonable doubt. This argument is grounded in his assertion that his identification by the victim was weak, tainted, and insufficient to surmount defendant's corroborated alibi.

The identification testimony of a single witness is sufficient to sustain a verdict of guilty if the witness is positive, credible, and had an opportunity to observe the accused. (*People v. Bennett* (1973), 9 Ill.App.3d 1021, 293 N.E.2d 687.) Mrs. Long was positive in her identification of defendant as the robber, and her opportunity to observe her assailant was excellent. The day was bright, and the visibility was very good. Her view was unobstructed as the man walked out of the gangway and then towards her. Once the man grabbed her, she was looking at his face from a very short distance away. Indeed, at one point, the robber lay directly on top of Mrs. Long, who "was looking at him all the time." ■ ■ While her description of defendant was not detailed, it was adequate. The proper test to be applied is not whether the witness gave a full description of the features and attire of the defendant at the time of the crime but whether the witness was close enough to defendant for a sufficient length of time under adequate lighting conditions to be able to make a positive identification. (*People v. Catlett* (1971), 48 Ill.2d 56, 268 N.E.2d 378.) Moreover, the trier of fact is under no obligation to

accept an accused's corroborated alibi over the positive identification of the complaining witness, where the latter had ample opportunity to observe the defendant. *People v. Catlett.*

■■ Under his reasonable doubt argument, defendant also contends that the pre-trial photographic identification of him made by the victim was so vague and weak as to establish a grave doubt as to its correctness. We do not agree. Mrs. Long selected defendant's photograph out of a group of several hundred only a few days after the robbery. Although she did request to see a later photograph of the same man, she testified that she had been positive in her initial photographic selection. She subsequently selected defendant's bearded photograph out of a group of 15 bearded and non-bearded pictures. The photographic identification was not weak or vague, and the procedures employed were proper.

Still arguing that he was not proved guilty beyond a reasonable doubt, defendant next contends that the procedures used at the lineup were improper. He maintains that they were so suggestive as to create a reasonable doubt of his guilt and a deprivation of his right to a fair trial.

A photographic exhibit attached to the record discloses that the lineup consisted of five men, including defendant. The other four men, all police officers, wore white shirts, ties, and sport coats. Their hair was neatly groomed. Two of the officers were over 40 years of age, while the other two were in their early twenties. Defendant, 25 years of age, wore a colored shirt open at the collar, no tie, and a dark sport coat. The photo also revealed that defendant's hair was mussed.

■■■ We do not countenance a lineup confrontation which unnecessarily singles out the prime suspect from the other participants. (See *United States v. Wade* (1967), 388 U.S. 218.) However, we need not determine whether the lineup used in the present case was unnecessarily suggestive because of the clear, convincing, and indisputable facts in the record demonstrating an independent basis for Mrs. Long's in-court identification. (See *People v. Triplett* (1970), 46 Ill.2d 109, 263 N.E.2d 24, *cert. denied* (1971), 401 U.S. 955.) The instant identification met the ultimate constitutional requirements for admissibility.

As trier of fact, the trial judge was in the best position to resolve the conflict in testimony. The evidence was not unreasonable, improbable, or unsatisfactory. In our opinion, defendant was proved guilty of robbery beyond a reasonable doubt.

Defendant's second contention is that he was denied effective assistance of counsel at trial. To support this argument, defendant points to the waiver by his retained counsel of his motion to suppress pre-trial identifications and to his counsel's failure to object, on the basis of *Miranda,* to the testimony of the State's rebuttal witness,

■■■  To test a claim of ineffective assistance of counsel in Illinois, where the trial attorney was of defendant's own choosing, defendant must prove that the caliber of representation was so low as to reduce the trial to a farce or a sham (*People v. Washington* (1968), 41 Ill.2d 16, 241 N.E.2d 425), or as to constitute no representation at all (*People v. De Simone* (1956), 9 Ill.2d 522, 138 N.E.2d 556), or as to deprive the defendant of the chance of being found not guilty of the charge. (*People v. McCoy* (1967), 80 Ill.App.2d 257, 225 N.E.2d 123.) It is not enough to sustain the charge by demonstrating that the representation was merely poor (*People v. Hicks* (1935), 362 Ill. 238, 199 N.E. 368) or by showing that counsel's trial tactics were unsuccessful. *People v. Gill* (1973), 54 Ill.2d 357, 297 N.E.2d 135.

Defendant initially contests the constitutionality of the Illinois tests, arguing that they should be discarded in favor of the adoption of a higher standard requiring "reasonably effective representation." See *West v. State of Louisiana* (5th Cir. 1973), 478 F.2d 1026; *State v. Harper* (1973), 57 Wis.2d 543, 205 N.W.2d 1.

■■  We do not think this proposed standard would any better set forth the prerequisites demanded by the constitutional mandate to supply defendant with effective assistance of counsel. No test can be formulated which will, in advance of close scrutiny of the trial record (*People v. Underhill* (1967), 38 Ill.2d 245, 230 N.E.2d 837, *cert. denied* (1968), 391 U.S. 912), furnish a definitive checklist of what is needed to sustain a defendant's assertion of constitutional deprivation of effective assistance of counsel. The present tests are the product of competing public policies: one, that every defendant should have available the means of securing every legal defense possible; the other, the practical recognition that no attorney is perfect, no trial tactic failsafe, few courtroom trials error-proof. A second reason for allowing some flexibility in the tests is to protect against mere pretended incompetence on the part of the attorney. (*People v. Fleming* (1971), 50 Ill.2d 141, 277 N.E.2d 872.) In our opinion, the constitutional provision requires reversal of a conviction where it is shown that the legal representation caused such substantial prejudice to the defendant as to deny him fundamental fairness, whether defendant's legal representative is appointed or privately retained. Since the tests in Illinois are adequate expressions of this rationale, they survive constitutional scrutiny.

We will now consider the arguments advanced by defendant in support of his claim of inadequate representation by his retained counsel. He first maintains that trial counsel's waiver of his motion to suppress pre-trial identifications deprived him of the opportunity of showing possible unduly suggestive influences in the pre-trial identification processes.

■■ We find no merit in defendant's speculative argument. On the basis of the facts adduced at trial regarding the procedures used at the photographic and lineup sessions, there is nothing to suggest that the motion would have been granted. At best, only the lineup might be considered to have been tainted. However, Mrs. Long's testimony showed clearly and indisputably an independent basis for the in-court identification. Furthermore, counsel may well have reasoned that evidence of the pretrial-identification procedures could have aided his case at trial by convincing the trier of fact that Mrs. Long's identification was uncertain. A waiver under such circumstances would constitute a legitimate trial tactic.

■■ Defendant's next contention under his incompetency-of-counsel argument deals with defense counsel's failure to make a *Miranda* objection to the rebuttal testimony of the arresting police officer. The officer testified to a statement given by the defendant at the time of his arrest which was in direct conflict with defendant's trial testimony. However, in *Harris v. New York* (1971), 401 U.S. 222, the Supreme Court held that the admission into evidence at trial of a statement given by the accused in violation of the *Miranda* standards would not amount to a violation of his federal constitutional right against self-incrimination when the statement is offered for the limited purpose of defendant's impeachment. Also see *People v. Moore* (1973), 54 Ill.2d 33, 294 N.E.2d 297, *cert. denied* (1973), 412 U.S. 943; *People v. LaBatt* (1969), 108 Ill.App.2d 18, 246 N.E.2d 845, *cert. denied* (1971), 401 U.S. 963.

We do not believe that trial counsel's representation was so low as to reduce the trial to a farce or a sham. Moreover, in our opinion, trial counsel's conduct during trial met the standard of "reasonable effective representation."

We find no merit in defendant's next contention that the trial court committed reversible error in failing to commence sua sponte a hearing on the voluntary nature of defendant's statements made at the time of his arrest. In making this argument, defendant makes no claim that the statements were made under duress or coercion.

■■ A proper objection to the admission of a statement on the ground of factual involuntariness must be made by pre-trial motion or by objection at the time of trial. (*People v. Strader* (1967), 38 Ill.2d 93, 230 N.E.2d 569.) Ordinarily, where an accused fails to make a proper objection, the reception into evidence without preliminary proof of voluntariness of the confession or admission is proper and not open to review. (*People v. Blumenshine* (1969), 42 Ill.2d 508, 250 N.E.2d 152.) In the present case defendant made no objection at the time of the rebuttal testimony on the ground of the involuntary nature of the statements, and

the court therefore was under no obligation to conduct a hearing on the voluntariness of the statements. Although we can envision circumstances where the record so blatantly supports the belief that a statement was issued under duress or coercion that the trial court may be required to hold such a hearing sua sponte, the present case does not present such circumstances.

Defendant's final contention on direct appeal concerns the propriety of his sentence. He argues that the trial judge considered irrelevant matters in determining the sentence.

After the judge had conducted the hearing in aggravation and mitigation, he imposed a sentence of 2 to 10 years. He then denied motions for a new trial and for arrest of judgment, and set a high appeal bond. In setting bond, the judge commented that defendant brought the alibi witnesses into court to testify falsely.

■■■ At a hearing in aggravation and mitigation, the judge may consider the nature and circumstances of the crime. (*People v. Fields* (1972), 8 Ill.App.3d 1045, 291 N.E.2d 258.) At the hearing the judge may properly comment upon the veracity of defendant's testimony (*People v. Valadez* (1973), 15 Ill.App.3d 585, 304 N.E.2d 667 (abstract opinion) ), as long as he does not base the sentence upon his belief that defendant perjured himself at trial. See *People v. White* (1971), 130 Ill.App.2d 775, 267 N.E.2d 129; *Scott v. United States* (D.C. Cir. 1969), 419 F.2d 264.

■■ Although the trial court's speculative remarks about the defendant bringing the alibi witnesses to court to perjure themselves were inappropriate, they do not constitute grounds to vacate the sentence. Unlike the facts in *White* and *Scott*, the judge here had already rendered the sentence at the time he made the challenged remarks. Thus there is no indication that he considered any allegedly perjurious testimony in fixing sentence. In view of the nature and circumstances of the robbery and evidence of prior convictions against defendant, the sentence was reasonable. We shall not disturb it.

We will now consider the issues raised in defendant's appeal of the order dismissing his post-conviction petition. He renews his contention that he was denied effective assistance of counsel, and also argues that the State deliberately withheld evidence favorable to the defense.

■■■ When relief is sought under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1969, ch. 38, par. 122—1 *et seq.*), the only question is whether defendant has been convicted in violation of his constitutional rights. (*People v. Cox* (1957), 12 Ill.2d 265, 146 N.E.2d 19.) Thus, where the State moves to dismiss a post-conviction petition, the court must focus upon the sufficiency of the petition's allegations and supporting documents. (*People v. Stepheny* (1970), 46 Ill.2d 153, 263 N.E.2d 83.)

Where the claim of substantial infringement of a constitutional right is based upon assertions outside the record, an evidentiary hearing is required (*People v. Williams* (1970), 47 Ill.2d 1, 264 N.E.2d 697), unless the necessary information is supplied in the attached documents. *People v. Morris* (1969), 43 Ill.2d 124, 251 N.E.2d 202.

Since all the information needed to evaluate defendant's contentions was contained in the supporting affidavits, the trial judge did not err in failing to conduct a superfluous evidentiary hearing. An examination of the evidence also reveals that the trial judge correctly dismissed the petition.

Defendant first contends that a study of the police reports and record of the preliminary hearing, attached to his post-conviction petition, discloses inconsistencies in Mrs. Long's testimony at trial, and proves that the failure of his counsel to exploit their devastating qualities at trial constituted ineffective representation. Our examination of the alleged inconsistencies either reveals no discrepancies between Mrs. Long's testimony at trial and her pre-trial statements or conflicts so insignificant as to negate on their face defendant's claim that his trial attorney deprived him of his fundamental right to a fair trial by failing to explore the differences in court.

■■ For instance, defendant complains that the victim's description of the robber as being a dark-complected white male clashed with the fact that defendant is of Puerto Rican descent. We do not agree. The victim's failure to denote the precise nationality of her assailant did not call into question her credibility. Defendant also claims that trial counsel should have explored Mrs. Long's inability to describe immediately the color of her assailant's eyes and hair. Again, we fail to see the significance attached to this fact. The record shows that the victim crawled home from the attack and told her husband to call the police. After the police arrived, Mrs. Long gave them a description of her assailant and was taken to the hospital. Although the first police report states that the color of the assailant's eyes and hair was unknown, a subsequent supplemental report described the assailant as having brown eyes and black hair. It is thus apparent that the initial failure of Mrs. Long to provide the above information after such a traumatic event would not have been of any aid to the defendant at trial. Defendant next argues that it was not until trial that Mrs. Long noted that her robber bore a scar on his eyebrow. Defendant now contends that the length of time which had elapsed from the date of the robbery to her trial testimony should have caused trial counsel to reason that her testimony was not based upon her memory of the attack but on subsequent identifications. To engage in such speculation would amount essentially to a redetermination of defendant's guilt

or innocence, a question not embraced within the purposes of post-conviction relief. *People v. Derengowski* (1970), 44 Ill.2d 476, 256 N.E.2d 455.

■■ It appears that Mrs. Long's testimony at the preliminary hearing differed in some respects from her trial testimony, but the differences were insignificant. She stated at the preliminary hearing that she selected defendant's photograph on her first visit to the police station, while at trial she stated that she identified defendant's photograph on the second visit. At the preliminary hearing, she testified that she had viewed photographs at the police station on three occasions, although a police report recited that the third session had occurred at her place of employment. In our opinion, these incidents, as well as her varying recollection concerning the amount of money stolen, were minor, and trial counsel's failure to explore them at trial did not deprive defendant of his constitutional right to effective assistance at trial. *People v. Newell* (1971), 48 Ill.2d 382, 268 N.E.2d 17.

■■ The record refutes defendant's claim that through defense counsel's neglect his alibi witnesses were not adequately prepared. Although some of the incidentals differed, the core of their testimony did not, despite a rigorous cross-examination. We likewise reject defendant's argument that his counsel's failure to employ an interpreter for the benefit of his witnesses prejudiced his right to a fair trial. To prevail in such a claim, it must be shown that the testimony was not understandable, comprehensible, or intelligible. (See *People v. Starling*, 21 Ill.App.3d 217.) The few times defendant's witnesses experienced difficulties in rendering responsive answers to propounded questions were later rectified by questions on the same subject which evoked prompt and ascertainable answers. The record does not establish the need for an interpreter. *People v. Allen* (1971), 132 Ill.App.2d 1015, 270 N.E.2d 54.

Defendant's final argument in his post-conviction appeal is that the prosecution purposely withheld evidence helpful to the defense. This contention refers to the above mentioned police reports and report of proceedings of the preliminary hearing. He maintains that the documents reveal that Mrs. Long and the police officer perjured themselves at trial.

■■ The documents were attached to the post-conviction petition. The trial judge was able to evaluate the effectiveness of the documents as instruments of impeachment. (*People v. McCarroll* (1973), 10 Ill.App.3d 249, 294 N.E.2d 52.) We will not disturb his finding, especially when it is evident that the minor discrepancies that did exist between Mrs. Long's pre-trial statements and testimony at trial were insufficient to suggest a knowing and wilful use by the State of prejured testimony. (*People v. Rose* (1969), 43 Ill.2d 273, 253 N.E.2d 456.) The sole question

regarding the police officer's alleged use of prejudiced testimony related to defendant's statement given at the time of his arrest. The police report contains a remark that defendant had made no admissions, and at the preliminary hearing, the police officer testified that defendant had stated to him that he had been in the area of the crime. At trial, the officer testified in rebuttal that defendant had told him that he had been to a party until 4 or 5 A.M. on the morning of the robbery and from there had gone to his girl friend's home. In our opinion, none of the officer's statements were inconsistent, and certainly his testimony was not perjurious. The State did not purposely conceal evidence helpful to the defense.

For the reasons stated, the judgment of conviction of the circuit court of Cook County is affirmed. The order dismissing the post-conviction petition is also affirmed.

Affirmed.

McGLOON and MEJDA, JJ., concur.