THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WALTER SHESTIUK, Defendant-Appellant.

First District (3rd Division)    No. 76-446

Opinion filed April 12, 1978.

James Fennerty and Marc Kadish, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

Walter Shestiuk was indicted, along with co-defendant Robert Gnewich, for conspiracy and unlawful use of weapons stemming from their alleged participation in the manufacture and possession of two pipe bombs. (Ill. Rev. Stat. 1975, ch. 38, pars. 8—2(a) and 24—1(a)(7).) Shestiuk was tried separately from Gnewich in a bench trial; he was acquitted on the conspiracy charge but was convicted on the unlawful use of weapons charge. For this conviction, Shestiuk received a sentence of one to three years imprisonment in the penitentiary. Shestiuk now appeals, raising two issues for review: (1) that he was denied his constitutional right to the effective assistance of counsel and (2) that his sentence is improper. The defendant was represented at trial by privately retained counsel.

The State's evidence introduced at trial shows that on the evening of May 29, 1975, two agents of the Metropolitan Enforcement Group, Frank Seil and William Kusch, along with a third individual, David Pease, met with Robert Gnewich who was to put them in contact with someone who would sell narcotics to the agents. While the four individuals were driving in Chicago, attempting to locate a narcotics dealer, Seil initiated a discussion with Gnewich as to where Seil might obtain some explosives. Gnewich thereupon directed the agents to drive to a building located at 1759 West Superior Street in Chicago. After arriving at that building, the four individuals went up to one of the apartments and Gnewich knocked on the door. Walter Shestiuk, the defendant, answered the knock and asked what Gnewich wanted. Gnewich responded that the individuals who were with him wanted to purchase a bomb. A discussion then ensued as to what type of bomb the agents desired. Shestiuk explained that he could make either a flash bomb or a smoke bomb and explained the difference between these two devices. He also informed the agents that the bombs would cost $23 apiece. The agents then agreed to purchase one of each type and all five individuals proceeded to the basement of the building where Shestiuk went to make the bombs.

Shestiuk had only one piece of pipe suitable for manufacturing bombs of the size the agents desired, so he sent Gnewich out to a hardware store

to obtain a second piece of pipe as well as to purchase four caps to plug the ends of the two pieces of pipe. Agent Kusch supplied Gnewich with money for the purchases. When Gnewich was unable to obtain the materials at one store, he and Kusch drove to a second store. Gnewich made the purchases while Kusch waited in the car.

Following the return of Kusch and Gnewich to the building at 1759 West Superior Street, Shestiuk completed one bomb and was almost finished with the second when Kusch paid Shestiuk the money for the devices. Then, following the pre-arranged signal from Kusch, police burst into the basement and effected the arrest.

The remainder of the State's evidence was directed at establishing the chain of custody of the materials seized from Shestiuk's residence and at establishing that the chemicals placed in the pipes by him were explosive in nature. The defendant offered no witnesses. Shestiuk moved for a directed verdict at the close of the State's evidence on the grounds of entrapment, but this motion was denied. In the closing argument Shestiuk's principal contention was that the State failed to prove that the device Shestiuk built was actually a bomb. The trial court found Shestiuk not guilty of conspiracy but found him guilty of unlawful use of weapons.

The first issue raised by Shestiuk is whether he was deprived of his constitutional right to the effective assistance of counsel, thereby requiring a reversal of his conviction. In support of his position, Shestiuk first argues that the standard for effective representation is the same for both privately retained counsel as well as for court-appointed attorneys. Next he urges this court to recognize either the "minimum standard of professional representation" test or the "reasonably likely to render and rendering reasonably effective assistance" text as the proper standard to be applied in both situations. Finally, Shestiuk argues that regardless of what standard of effective representation is applied, he is entitled to a reversal because his trial counsel misunderstood the defense of entrapment and further failed to engage in proper pretrial discovery.

■■ In recent decisions, this court has rejected the argument that the standard for effective representation by appointed counsel differs from the standard for effective representation by retained counsel. (*People v. Virgil* (1977), 54 Ill. App. 3d 682, 370 N.E.2d 74; *People v. Hawkins* (1974), 23 Ill. App. 3d 758, 320 N.E.2d 90; *People v. Ortiz* (1974), 22 Ill. App. 3d 788, 317 N.E.2d 763; *People v. Long* (1973), 12 Ill. App. 3d 974, 298 N.E.2d 784.) In each of these cases the sham or farce test was considered to be applicable in both situations. This court has also considered, on a prior occasion, the question of whether the sham or farce standard adequately protects the defendant's constitutional right to effective representation by counsel. In *People v. Ortiz*, we concluded that this standard does provide sufficient constitutional protection. Based upon

these precedents, we believe that for Shestiuk to sustain his claim that he has been denied his right to effective assistance by his trial counsel, he must show incompetent behavior on the part of his counsel which had the effect of reducing his trial to a farce or a sham.

The first error offered by Shestiuk as grounds for finding that he was deprived of his constitutional right to the effective assistance of counsel is that his counsel was ignorant of the law governing the defense of entrapment. His principal contention is that his trial counsel, in arguing the entrapment defense, failed to argue that Shestiuk was not predisposed to illegally manufacture a bomb when the police officers presented him with an opportunity to do so.

■■ We agree with Shestiuk that the lack of a predisposition to engage in the illegal activity is an essential element of the defense of entrapment (*United States v. Russell* (1973), 411 U.S. 423, 36 L. Ed. 2d 366, 93 S. Ct. 1637), but we cannot agree that the record shows that Shestiuk's trial counsel was unaware of this element. His counsel argued entrapment both on the motion for a directed verdict and on the motion for a new trial. On both occasions, his counsel clearly argued that Shestiuk was not predisposed to manufacture the bombs and that the crime was conceived solely in the minds of the government agents. While we recognize that the bulk of his counsel's argument focused upon the conduct of the police officers in implementing the crime, we feel that the decision to emphasize those factors was a matter of strategy and mistakes of strategy will not serve to render a counsel's representation in violation of constitutional requirements. (*People v. Torres* (1973), 54 Ill. 2d 384, 297 N.E.2d 142; *People v. McNeal* (1977), 56 Ill. App. 3d 132, 371 N.E.2d 926.) Since we believe that the record does not support the contention that Shestiuk's counsel misunderstood the law on the entrapment defense, we find that it offers no support for the argument that Shestiuk has been denied the effective assistance of counsel.

We also believe that the second ground offered to show the denial of the effective assistance of counsel—the failure to engage in pretrial discovery—does not require reversal of Shestiuk's conviction. The essence of Shestiuk's claim is that his trial counsel failed to file pretrial discovery motions and therefore did not receive transcripts of the preliminary hearing and grand jury testimony and the police reports. The State claims that there is no indication in the record that defense counsel lacked either the transcripts or the police reports. The memorandum of orders included in the record on appeal contains an entry for a defense motion for discovery. This motion was filed at a time when both defendants were still joined. In addition, the record contains the people's answer to discovery in which specific references are made to the police reports. Although the answer is addressed to counsel for the co-defendant

Gnewich, the State argues that its inclusion in the record on appeal indicates that the wrong address was placed on the answer. From these documents it could be concluded that Shestiuk's counsel engaged in pretrial discovery, or had received the benefits of pretrial discovery initiated by the co-defendant. No objection was filed for the inclusion of these items in the record on appeal.

■■ The defendant responds to the State's argument by pointing to the transcript of proceedings on the day the defense motion for discovery was made; the transcript was not included in the record on appeal but rather was appended to Shestiuk's reply brief. However, we may not consider this transcript since it is not part of the record on appeal and the defendant made no motion to amend the record on appeal. Ill. Rev. Stat. 1975, ch. 110A, par. 329.

The State's position that Shestiuk's counsel engaged in pretrial discovery is highly persuasive. The entry of a discovery motion on the half-sheet combined with the inclusion in the record on appeal of the State's answer to that motion, offers support for the inference that Shestiuk's trial counsel sought to discover the disputed information and/or had that information available to him.

■■ We are unpersuaded that the defendant's constitutional right to the effective assistance of counsel was impinged, for the record clearly supports the finding that the disputed information was available to his counsel. Shestiuk may be deemed to have been denied the effective assistance of counsel only if the representation provided by his trial counsel is of such a low caliber as to amount to no representation at all or to reduce the court proceedings to a farce or a sham. (*People v. Ortiz* (1974), 22 Ill. App. 3d 788, 317 N.E.2d 763.) We do not believe that it may fairly be said that the representation afforded the defendant contravened this standard where the disputed information was available to the defendant despite the failure of his counsel to make a formal motion to discover that information.

Since we find neither ground proffered by Shestiuk as sufficient to support a finding that he was denied his constitutional right to the effective assistance of counsel, we hold that the defendant is not entitled to a reversal of his conviction on this first issue.

The second issue raised by Shestiuk on appeal is that his sentence is improper. First he contends that in imposing a penitentiary term, the trial court failed to consider any of the other sentencing alternatives authorized by section 5—5—3(d) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—5—3(d)) and asks this court to remand his case for a rehearing on the sentence. In the alternative, Shestiuk claims that the term of one to three years imprisonment is excessive and requests a reduction of his sentence to a term of one year periodic imprisonment.

We find, however, that we must reject both of these arguments.

■■ We do not believe that the record supports Shestiuk's conclusion that the trial court failed to consider alternatives to imprisonment. The defendant's position is based primarily on the fact that the trial court did not specifically include in the record any statement that it considered the alternatives to imprisonment. However, we do not feel that the mere failure by the trial court to make such a statement is sufficient evidence to establish that the court did not actually consider such alternatives. *People v. Rios* (1976), 44 Ill. App. 3d 113, 358 N.E.2d 65.

Shestiuk, citing *People v. Bucciferro* (1976), 37 Ill. App. 3d 211, 345 N.E.2d 738, and *People v. Travelstead* (1976), 36 Ill. App. 3d 119, 343 N.E.2d 183, claims that in sentencing a defendant, the trial court must make an affirmative showing in the record that sentencing alternatives were considered. We agree that such a showing is necessary.

We find that the record in this case supports the conclusion that the court considered the alternatives to imprisonment. In sentencing Shestiuk, the trial court specifically declared that its determination of the sentence was based upon a consideration of "the matters on the presentence report and matters in aggravation and mitigation." During the hearing in aggravation and mitigation, Shestiuk's counsel specifically argued in favor of a sentence of probation. Subsequent to the announcement of the sentence, he filed a petition to reconsider the sentence, suggesting that either probation or a work release sentence was more appropriate.

■■ This court has no power to reduce Shestiuk's sentence to a term of one year periodic imprisonment, since the scope of our review of the sentence imposed by the trial court is limited to determining whether the refusal by the court to impose a sentence of periodic imprisonment constitutes an abuse of discretion. (*People v. McGruder* (1974), 20 Ill. App. 3d 987, 313 N.E.2d 507; *People v. DeBates* (1974), 18 Ill. App. 3d 663, 310 N.E.2d 228.) In view of the seriousness of the offense of which Shestiuk was convicted, we cannot say that the trial court's decision to sentence him to the penitentiary constituted an abuse of discretion.

For the above stated reasons, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

JIGANTI, P. J., and McNAMARA, J., concur.