THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MORRIS VIRGIL, Defendant-Appellant.

First District (5th Division)   No. 76-845

Opinion filed November 10, 1977.

James Geis and Andrew Berman, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, James S. Veldman, and James A. Hullihan, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

After a trial by jury, defendant, Morris Virgil (herein indicted and sometimes referred to as Virgil Morris), was found guilty of the offense of armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—2) and was sentenced to a term of 4 to 12 years in the penitentiary. On appeal defendant contends that he was denied a fair trial in that the State improperly introduced evidence implicating him in other crimes, and that he was denied effective assistance of trial counsel.

We affirm.

Defendant was represented by retained counsel at trial where the following facts were adduced.

Joseph Seals, owner of the Chase Lounge, testified that at about 8:30 p.m. on February 4, 1974, he was in the lounge along with a patron and an employee, Maxine Jacobs. A man entered the front door, walked to the washroom at the rear of the tavern where he remained for only a second or two, and then walked back through the tavern and out the front door. Before the front door closed, he re-entered with two companions. One of the three men had a gun; he was later identified as defendant. Defendant announced a holdup and forced Seals to lie on the floor, while the other two men beat the patron and forced Maxine Jacobs to give them her ring and money from the cash register. The two men also took eight quarts of whiskey and petty cash. Meanwhile, defendant remained near the front door. He suggested to his companions that he kill Seals, but one of the men dissuaded him. The three men then fled. Seals immediately went to the door and saw the three get into a black, 1967 General Motors car. Seals identified the three men at a police lineup four days after the occurrence. At trial Seals was shown a picture of the car in which defendant was apprehended. He identified it as the same car he had seen the three men drive away the night of the incident.

On cross-examination Seals stated that he saw the man with the gun run to the car, but he did not know if the man had a limp. Seals reiterated that the man with the gun was defendant.

Maxine Jacobs testified that she had been working at the Chase Lounge on the night of the incident. She stated that defendant walked in and out of the bar, and then immediately returned with two companions. One of the men had a gun. The men cursed her and told her to locate the money. They beat a patron, took the money and whiskey, and fled. She identified the three men at a police lineup on February 8, 1974. On cross-

examination Ms. Jacobs testified that she did not notice whether the man with the gun walked with a limp.

Officer John Crenshaw of the Chicago Police Department testified as follows. On February 8, 1974, he was working on a crime pattern, which consisted of 13 to 15 robberies with the common elements that each had been committed by three men using a black, 1968 Skylark with a certain license number. He had information concerning the names and addresses of the men, and on February 8 he received information of the location of the car. He located the car and arrested three men at the scene, including defendant. The three men were later identified by Joseph Seals and Maxine Jacobs at a lineup. At trial Crenshaw identified pictures of the car taken at his direction. The exhibits had previously been identified at trial by Seals as pictures of the getaway car.

Defendant testified in his own behalf and presented an alibi defense. He identified the aforementioned exhibits as pictures of a car owned by him. On the morning of February 4, he had taken the car to be repaired at a shop on west Roosevelt Road. He obtained a receipt for a $10 deposit from "Richard Cardomoni," and he left the car at the shop. He then took a bus to the home of his uncle, John Asberry. The two men spent the afternoon and evening at My Sins Lounge, and defendant stayed overnight at his uncle's home. He picked up his car at the repair shop the next morning.

On cross-examination defendant testified that he had spoken with "Nick Cardomoni" when he took his car in for repairs on February 4.

John Asberry, defendant's uncle, corroborated defendant's testimony in that he had spent the afternoon of February 4 and that evening until about 2 a.m. with defendant at My Sins Lounge. He further testified that defendant sustained injuries to his legs while in the service, and that he walks with a limp.

In rebuttal, Nick Cardamone testified that he had owned a garage operated by his son on west Roosevelt Road. The business closed on January 3, 1974, and no business was conducted thereafter. He denied dealing with defendant on February 4. He stated that defendant approached him in March 1974 and asked him to prepare a receipt, but he refused to do so.

After hearing arguments of counsel, the jury returned a verdict of guilty of armed robbery.

OPINION

I.

Defendant argues that he was denied a fair trial in that Officer Crenshaw's testimony concerning a crime pattern implicated him in other

crimes without proof of his involvement therein. He asserts that the only effect of the testimony was to show a propensity toward criminality, which is clearly impermissible. Although there was no objection to Crenshaw's testimony at trial, defendant claims that such evidence constitutes plain error.

The State, however, argues that the reference to the crime pattern was only incidental to and part of a continuing narrative of the circumstances of the arrest. It is contended that the purpose of Crenshaw's testimony was not to show a common scheme; rather, the thrust of the testimony was to connect defendant with the car used in the armed robbery at issue by showing that he was arrested in a car identified by the victim.

We do not agree with the State that Officer Crenshaw's testimony of a crime pattern was part of a continuing narrative. The record shows that the testimony was expressly elicited by the Assistant State's Attorney in the following colloquy:

"Q Officer Crenshaw, calling your attention to February 8, 1974, at approximately 5:00 o'clock in the afternoon on that date, where were you?

A At approximately 5:00 o'clock on the 8th of February, 1974, I was working Crime Pattern 74R221.

Q Officer, will you explain to the ladies and gentlemen of the jury what a Crime Pattern work is?

A A Crime Pattern is a pattern of crime that has been committed in certain areas at certain times. In this particular pattern the R stands for robbery.

Q Officer, on this Crime Pattern, how many—approximately how many robberies were involved?

A Approximately 13 to 15.

Q Okay. Officer, what was known about this pattern at that time, the common elements in this pattern?

A I had information in regard to a certain vehicle that was used in the commission of the crimes.

Q What was the description, Officer, of that certain vehicle?

A '68 black Skylark, license plate Illinois 74 KG 7522.

Q Officer, was there any other common denominator among these various robberies in this crime pattern?

A Well, it was always three men, and I had received information in regard to the address and the names of the offenders."

It is clear that evidence of other crimes which may have been committed by defendant wholly independent of and disconnected from the crime for which defendant is being tried, is not admissible. (*People v. Tranowski* (1960), 20 Ill. 2d 11, 169 N.E.2d 347; *People v. Spencer* (1972),

7 Ill. App. 3d 1017, 288 N.E.2d 612.) Although defense counsel did not object to the admission of this evidence at trial, it is now urged that the references constitute plain error.

■■ It is not the purpose of a reviewing court in a criminal case to determine whether the record is free from error. Even where error has been committed at trial by improper evidence of other crimes, a judgment of conviction will not be reversed unless real justice has been denied or the verdict of the jury may have resulted from such error. (*People v. Tranowski; People v. Clark* (1976), 41 Ill. App. 3d 419, 354 N.E.2d 134.) Where the competent evidence adduced at trial clearly establishes defendant's guilt beyond a reasonable doubt, a judgment of conviction should be affirmed. *People v. Crotty* (1976), 44 Ill. App. 3d 413, 357 N.E.2d 1360; *People v. Allen* (1971), 1 Ill. App. 3d 197, 272 N.E.2d 296.

■■ In the instant case defendant was positively identified by two eyewitnesses, his car was identified as the getaway car, and his alibi defense was effectively impeached. We are convinced that competent evidence established defendant's guilt beyond a reasonable doubt, and that he was not denied a fair trial.

## II.

Defendant next argues that he was denied effective assistance of counsel in that his privately retained trial counsel ignored the evidence most favorable to his client and failed to object to prejudicial testimony.

In *People v. Morris* (1954), 3 Ill. 2d 437, 121 N.E.2d 810, our supreme court distinguished cases involving court-appointed and privately retained counsel relative to complaints concerning effective assistance of counsel. Later in the case of *People v. Nelson* (1969), 42 Ill. 2d 172, 175, 246 N.E.2d 244, 246, the court stated "* * * one who chooses his own counsel, or acquiesces in the selection by another, cannot ordinarily claim a denial of due process because of his lawyer's shortcomings [citations], but we have also indicated that where such representation is so grossly inadequate as to reduce the proceedings to a farce, a constitutional issue * * * may be present. [Citations.]" In *People v. Somerville* (1969), 42 Ill. 2d 1, 5, 245 N.E.2d 461, 464, the court stated: "Under the expanding concept of due process of law in many areas of criminal procedure (*People v. Morris*, 3 Ill. 2d 437, 448), where representation by counsel of defendant's choice is of such low calibre as to amount to no representation at all, or reduces the court proceedings to a farce or a sham, defendant is denied the fair trial contemplated by the due process guarantees of the Federal and State constitutions. [Citations.]" (See also *People v. Fleming* (1971), 50 Ill. 2d 141, 277 N.E.2d 872.) The requisite

standard which has developed is the same in both instances of privately retained and court-appointed counsel, namely, the incompetency of counsel must not be of such character as to reduce the trial to a farce or sham. *People v. Hawkins* (1974), 23 Ill. App. 3d 758, 320 N.E.2d 90; *People v. Ortiz* (1974), 22 Ill. App. 3d 788, 317 N.E.2d 763.

■■ In order to successfully support an allegation of inadequate representation at trial, defendant must clearly establish (1) actual incompetence of counsel, as reflected by the manner of carrying out his duties at trial, and (2) substantial prejudice resulting, without which the outcome would probably have been different. (*People v. Morris; People v. Stepheny* (1970), 46 Ill. 2d 153, 263 N.E.2d 83; *People v. Clark* (1976), 42 Ill. App. 3d 472, 355 N.E.2d 619.) Moreover, the fact that another attorney in the better light of hindsight might possibly have conducted trial in a different manner should not be accepted as an indication of incompetency. *People v. Baer* (1976), 35 Ill. App. 3d 391, 342 N.E.2d 177.

We find that in the present case the instances of alleged incompetence do not approach the degree required for reversal. Defendant contends that the "most glaring instance" of trial counsel's incompetency was his failure to note in closing argument an alleged contradiction in the testimony of the two eyewitnesses. In this respect defendant contends that Joseph Seals was positive that defendant was the man with the gun, while Maxine Jacobs was positive he was not.

A review of Maxine Jacobs' testimony on cross-examination by the Assistant State's Attorney reveals the following:

"Q Miss Jacobs, do you know who the third fellow was?
A Yes.
Q Was he the one that had the gun?
A No. You are talking about the third fellow.

\* \* \*

Q Do you know who the party is that walked in originally and looked the place over?
A Yes.
Q Who was it?

\* \* \*

THE COURT: Pointing to the defendant, Virgil Morris [*sic*].
Q Was he the one that had the gun?
A No, he didn't have a gun then.
Q He didn't have a gun then?
A No."

■■ A reasonable interpretation of Ms. Jacobs' testimony is that defendant did not have a gun when he first entered the tavern. This testimony coincides with Joseph Seals' statement that he saw the gun after

the first man had left and returned with his companions. We cannot say that failure to allude to this testimony in closing argument is an indication of incompetence of counsel.

Nor do we find merit in defendant's other examples of alleged incompetency of counsel, which include mishandling of the alibi defense, failure to introduce medical testimony concerning defendant's physical disabilities, and failure to object to evidence of other crimes. From the totality of the record we conclude that defendant was afforded a fair trial. Although defense counsel may have committed tactical errors or errors in judgment, we cannot conclude that based on this record the trial was reduced to a farce.

For the foregoing reasons, the judgment of conviction of armed robbery is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.