THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALEXANDER BRENT, Defendant-Appellant.

First District (5th Division)    No. 77-6

Opinion filed January 6, 1978.

James J. Doherty, Public Defender, of Chicago (Frances Sowa, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Mary Ellen Dienes, and Michael John Madden, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Following a jury trial defendant, Alexander Brent, was convicted of the offense of armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—2) and sentenced to a term of 4 to 6 years. He appeals contending that: (1)

prejudicial and plain error was committed in violation of his constitutional right to remain silent when the prosecutor stated that defendant's refusal to talk with the arresting officer indicated his guilt; (2) he was not proved guilty beyond a reasonable doubt; (3) he was denied a fair trial because of the admission of evidence that he was associated with a "wanted" criminal offender; (4) an improper instruction on circumstantial evidence was submitted to the jury; and (5) he was denied his constitutional right to the effective assistance of counsel.

Complainant, Helen McCants, testified. She was robbed of $40 at 6:45 p.m. on March 13, 1974, while driving home from a store. At that time she noticed a gold-colored Cadillac behind her. After entering the driveway of her home, Mrs. McCants saw defendant go to her front door which was six feet away. A few seconds later she saw defendant's face as he walked to the driveway. When she opened her car door to get out, defendant appeared from the back of her car with a long knife in his hand, warned her not to scream, and demanded her money. Complainant requested him not to harm her and sat back in the car. Defendant leaned over her while she took money from her purse and handed it to him. He then ran to the end of the driveway and turned south. She went into her home and called the police. She described defendant as being a male Negro of brown complexion, 6 feet tall, 150 pounds and about 20 years of age. He was wearing light blue pants and a light-colored knitted ski cap.

Raymond McCants, complainant's 14-year-old son, testified that he was outside playing when he saw his mother pull into the driveway. From a distance of 20 to 30 feet, he also saw defendant get out of a flat gold-colored Cadillac from the passenger side. He watched as defendant entered the driveway, went to the front door and then approached his mother's car. Defendant leaned halfway into the car and then walked away for a short distance before defendant began to run in a southerly direction. Both McCants and his mother made positive in-court identifications of defendant.

Police officer Dale Riordan testified that defendant was arrested on April 1, 1974, for interfering with the arrest of his step-brother, Sterling Campbell. While defendant was in custody, Officer Riordan noticed that he resembled the description of complainant's assailant. He requested complainant to view an eight-man lineup which included defendant, whom she identified as the man who robbed her.

Defendant testified in his own behalf and denied that he robbed the complainant or that he had ever seen her before trial. He further stated that neither he, his relatives, nor acquaintances owned any large gold-colored automobile. He acknowledged that he could not remember what he was doing at the time of the robbery and further testified that Officer Dale Riordan never told him the date the offense was committed. On

cross-examination defendant was questioned about the amount of time he spent with his stepbrother in March 1974. Defense counsel objected to this question. It was also brought out that the police were looking for defendant's stepbrother in connection with other robberies.

Officer Riordan testified in rebuttal that after the lineup identification he informed defendant that he was being charged with armed robbery. When he offered to verify any alibi that defendant might have as to where he was on March 13, 1974, Riordan testified without objection that defendant responded "go f___ [yourself]." In closing argument, the prosecution informed the jury that defendant could not tell Officer Riordan where he was because defendant was "probably [with] Sterling Campbell committing the armed robbery."

OPINION

■■ Defendant's contentions that it was prejudicial error to admit the testimony as to his vulgar remark to Officer Riordan and that he was not proven guilty beyond a reasonable doubt will be considered in conjunction. Defendant asserts that his statement to Officer Riordan reflected defendant's express intention to exercise his constitutional right to remain silent. He also contends that the prosecutor in closing argument deprived him of this right by construing the statement as a desire not to talk because he was guilty. While no objection was made at trial to Officer Riordan's testimony concerning defendant's remark, we believe that consideration may be given to the issue now raised. *People v. Robinson* (1976), 44 Ill. App. 3d 447, 358 N.E.2d 43; *People v. Monaghan* (1976), 40 Ill. App. 3d 322, 352 N.E.2d 295.

It was unnecessary for the State to introduce Officer Riordan's testimony as to defendant's vulgar remark and arguably improper for the prosecutor to refer to this remark as an indication of defendant's guilt. His remark to Officer Riordan occurred at the time of defendant's arrest two weeks after the commission of the crime, and it had no probative value as to his guilt or innocence. It is our conclusion, however, that these errors do not appear to have caused harm to the defendant.

■■ ■ The State's case rested upon the testimony given by the complainant and her son. Both made positive in-court identifications of the defendant as the man who robbed complainant. In addition, there is no indication complainant identified anyone other than defendant. While defendant contends that he was not proved guilty beyond a reasonable doubt because neither of these witnesses had sufficient opportunity to observe the assailant and to make a positive identification, the record reveals otherwise. Complainant saw her assailant at three different times; when he walked onto the driveway from her door, when he stepped out from the rear of her car while carrying the knife, and when he stood

leaning over her while she took the money from her purse and handed it to him. She had ample opportunity to observe defendant at these times and also when she asked him not to harm her. Her description of defendant was sufficient to enable Officer Riordan to notice the resemblance of defendant to the assailant two weeks later. Complainant's son testified that he saw defendant's face for a few seconds when he got out of the gold-colored Cadillac. Both testified that it was still light outside when the incident occurred. We find that any error occurring by Officer Riordan's testimony concerning defendant's remark or reference to it in closing argument was harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.

Defendant also contends that he was denied a fair trial due to the fact that the evidence linked him to his stepbrother, who was described as a "wanted" robber by Officer Riordan. Also, in regard to this claim he relies on questions posed to him, over objection, which elicited responses that he had associated with his stepbrother during March 1974. Defendant says the result of this evidence was to link him to other offenses and prejudice him before the jury.

■■■ Defendant made no objection to Officer Riordan's testimony that "We were working on a crime pattern of armed robberies, and we were going to arrest Sterling Campbell." Since no objection was made, defendant's contention is thereby waived on review. (*People v. Fain* (1976), 41 Ill. App. 3d 872, 355 N.E.2d 61.) Moreover, Officer Riordan's testimony explained his presence at defendant's house, and it did not suggest defendant was involved in the crimes for which his stepbrother was being sought. The testimony elicited from defendant on cross-examination concerned the close relationship between him and his stepbrother and that they lived in the same house. We note the questions were not extensive. The fact defendant had a close relationship with his stepbrother, who lived in the same house, is not extraordinary. We do not find these questions to be prejudicial. Moreover, it has been held that a court of review will not interfere with a trial court's ruling on the scope of cross-examination unless there is a clear abuse of discretion resulting in manifest prejudice to the defendant. (*People v. Blakes* (1976), 63 Ill. 2d 354, 348 N.E.2d 170.) In view of the clear and convincing testimony given by the complainant and her son, we are of the opinion that there was no abuse of discretion by the trial court which resulted in manifest prejudice to the defendant.

■■ An additional contention by defendant is that he did not receive a fair trial because an instruction was proffered by the State and given to the jury defining circumstantial evidence. This instruction relates to proof of facts from which a reasonable inference of other facts may be shown that tend to establish guilt or innocence. (IPI Criminal No. 3.02, first

paragraph.) Defendant claims that no circumstantial evidence was presented, and the effect of the instruction was to allow the jury to consider defendant's relation with his stepbrother and the comment to Officer Riordan. No objection was made challenging this instruction at the time of trial. Failure to make such objection constitutes a waiver of defendant's right to object to the instruction on appeal. (*People v. Calcaterra* (1965), 33 Ill. 2d 541, 213 N.E.2d 270.) Moreover, we note that defense counsel referred to the police failure to recover the knife used in the armed robbery, the money taken or the location of the Cadillac used in the escape to question the sufficiency of the evidence against defendant. This argument would support the instruction of which defendant now complains.

■■ Finally, defendant contends that he was denied his constitutional right to the effective assistance of counsel because his retained counsel failed to represent him adequately by making proper and timely objections, and that he further allowed the trial to deteriorate to a level of guilt by association. The supreme court has held that in order to warrant the reversal of a conviction on grounds of inadequacy of representation, the defendant must demonstrate the actual incompetence of counsel in carrying out his duties, and, in addition, it must appear that substantial prejudice results therefrom without which the outcome would probably have been different. (*People v. Gill* (1973), 54 Ill. 2d 357, 297 N.E.2d 135; *People v. Harper* (1969), 43 Ill. 2d 368, 253 N.E.2d 451.) This court has recently said, "The requisite standard which has developed is the same in both instances of privately-retained and court-appointed counsel, namely, the incompetency of counsel must not be of such character as to reduce the trial to a sham or a farce." (*People v. Virgil* (1977), 54 Ill. App. 3d 682, 370 N.E.2d 74.) Considering the entire record in this case, it cannot be said that the outcome would probably have been different had defense counsel made all of the proper and timely objections, nor can it be said the proceedings were reduced to a sham or a farce by counsel's conduct.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

SULLIVAN, P. J., and WILSON, J., concur.