**UNITED STATES of America ex rel. Rita DOWD, C–97062, Petitioner,**

v.

**Michael LANE, Director, Illinois Department of Corrections and Jane E. Huch, Warden, Dwight Correctional Center, Respondents.**

**No. 82 C 4930.**

United States District Court, N.D. Illinois, E.D.

Nov. 16, 1983.

Alan D. Goldberg, Asst. State Appellate Defender, Chicago, Ill., for petitioner.

Marcia Friedl, Asst. Atty. Gen., State of Ill., Chicago, Ill., for respondents.

## MEMORANDUM AND ORDER

BUA, District Judge.

The instant matter concerns a petition for writ of habeas corpus under 28 U.S.C. § 2254 (1976). Before the Court are the parties' cross-motions for summary judgment. For the reasons stated herein, the petitioner's motion is denied and the motion of respondent is granted.

Petitioner Rita Dowd was charged with conspiracy and with murder in the Circuit Court of Cook County, Illinois. After a jury trial, she was found guilty as charged and was sentenced to 30 to 60 years imprisonment. No judgment was entered on the conspiracy count, because it merged into the murder conviction. The Illinois Appellate Court affirmed the conviction, remanding only to modify the mittimus to reflect conviction and sentencing only as to murder. *People v. Dowd,* 101 Ill.App.3d 830, 57 Ill.Dec. 214, 428 N.E.2d 894 (1st Dist. 1981).

After the Illinois Supreme Court denied leave to appeal, Dowd filed a petition for a writ of habeas corpus with this Court claiming: (1) the State knowingly used perjured testimony and successfully objected

to defense counsel's efforts to reveal that perjury, resulting in a violation of due process and the right to confront and cross-examine witnesses; and (2) petitioner was denied the effective assistance of counsel. In response, the State filed a motion, styled a motion for summary judgment, requesting the Court to deny the petition for failure to exhaust state remedies as required by 28 U.S.C. § 2254(c). The Court treated respondent's motion as a motion to dismiss, and denied it, holding that petitioner had exhausted all state remedies. *Memorandum Order*, April 7, 1983. Respondent then filed a motion for summary judgment, and petitioner filed a cross-motion for summary judgment.

■ Although the Appellate Court for the First District of Illinois decided that petitioner's claims did not warrant disturbing the trial court's judgment, it is clear that this Court is required to make its own independent examination of the record. *Townshed v. Sain*, 372 U.S. 293, 316, 83 S.Ct. 745, 758–759, 9 L.Ed.2d 770 (1963); *Napue v. Illinois*, 360 U.S. 264, 271, 79 S.Ct. 1173, 1178, 3 L.Ed.2d 1217 (1959). At the same time, the state appellate court findings are to be afforded a presumption of correctness, and, as here, in the absence of a specific finding that the contested matters fall within the purview of paragraphs (1) through (7) of 28 U.S.C. § 2254(d) (1976), this Court must defer to the state court findings. *Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981); *United States ex rel. Ross v. Franzen*, 688 F.2d 1181, 1184 (7th Cir.1982). After a thorough review of the record and a study of the Illinois Appellate Court's carefully considered 15-page opinion, this Court agrees with the state appellate court's underlying factual determinations. Furthermore, this Court also agrees with the state appellate court's determinations of the issues of law, as discussed below.

## I. PETITIONER'S CLAIMS

### A. *The State's Knowing Use of Perjured Testimony*

■ The facts underlying petitioner's first claim are fully set out in the state appellate court's opinion. *People v. Dowd*, 101 Ill.App.3d 830, 57 Ill.Dec. 214, 428 N.E.2d 894, 896–902 (1st Dist.1981). To summarize, petitioner was romantically involved with one Kenneth Wilhelm, a married man. She and Wilhelm were indicted for murdering Wilhelm's wife. Wilhelm pled guilty to the murder charge, and received the minimum sentence, in return for which he agreed to affirm a statement that he had given to police implicating petitioner in the crime. Later, petitioner was tried, and Wilhelm appeared as a witness against her. His testimony was extensive and highly damaging to petitioner's case. Defense counsel attempted to impeach Wilhelm on cross-examination. He elicited from Wilhelm the admission that Wilhelm had, on an earlier occasion, given a substantially different story to police—a version which exculpated petitioner. Defense counsel then inquired into Wilhelm's own guilty plea and his sentence. Wilhelm testified that as a condition of his sentencing, he was required to affirm the later version of his story to the police—the version which inculpated petitioner. On redirect, the prosecutor attempted to minimize the impact of Wilhelm's admission by asking, "Did the State make you any deals for your plea?" Wilhelm answered, "No." This interchange prompted defense counsel to conduct recross-examination, in order to reassert and clarify Wilhelm's original testimony that Wilhelm's sentence was conditioned on his affirming the story incriminating to petitioner. The prosecution thwarted this effort with a series of objections, interlaced with the comments, "There was no bargain. He [Wilhelm] testified that there was no bargain;" and "Since when is 14 years a bargain ...?" *See People v. Dowd*, 57 Ill.Dec. at 218, 428 N.E.2d at 898.

On appeal, petitioner claimed, and the Illinois Appellate Court agreed, that "the prosecutor's behavior was outrageous and inexcusable. He not only failed to correct testimony which he knew was likely to convey a false impression to the jury, but he deliberately emphasized the testimony

by repeating it." 57 Ill.Dec. at 222, 428 N.E.2d at 902.

Petitioner maintains that as a result of the prosecutor's misconduct and the trial judge's sustaining of the prosecutor's objections, the jury was deprived of the opportunity to truly evaluate the credibility of Wilhelm, the State's key witness. Had the jury known that Wilhelm was given lenient treatment by the prosecution, petitioner argues, the credibility of Wilhelm's testimony would have been greatly diminished.

Responding to this same argument when presented earlier on appeal, the Illinois Appellate Court held that even had the perjury been corrected, the jury would have reached the same verdict, and therefore rejected petitioner's argument. 57 Ill.Dec. at 222–223, 428 N.E.2d at 902–03. The state appellate court correctly relied upon the test laid down by the U.S. Supreme Court in *Napue v. Illinois,* 360 U.S. 264, 271–72, 79 S.Ct. 1173, 1178 (1959), and subsequently reaffirmed in *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972) and *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976): Knowing use by the government of perjured testimony must be set aside if "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs,* 427 U.S. at 103, 96 S.Ct. at 2397. The Supreme Court has further stated:

> "The principle that a State may not knowingly use false evidence, including false testimony, ... does not cease to apply merely because the false testimony goes only to the credibility of the witness. The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend."

*Napue v. Illinois,* 360 U.S. at 269, 79 S.Ct. at 1177.

The Illinois Appellate Court recognized the importance of Wilhelm's credibility in the case. That court, however, found that the evidence, taken as a whole, so substantiated and corroborated Wilhelm's testimony that neither the judgment of the jury nor the outcome of the trial would have been affected by the knowledge that Wilhelm was being untruthful when he denied having made a deal with the State. 57 Ill.Dec. at 223, 428 N.E.2d at 903.

The *Napue* test is a strict one, which often results in the granting of habeas corpus writs. To deny petitioner's claim concerning the prosecution's knowing use of perjured testimony, this Court must be able to conclude that there is simply no reasonable likelihood that the jury would have disbelieved Wilhelm's story if it had known of his plea-related motive for testifying as he did.

This Court, after an independent review of the record in light of the stringent standard laid down in *Napue,* finds itself in full agreement with the conclusion of the Illinois Appellate Court. The jury had before it independent and overwhelming evidence that Wilhelm was telling the truth as to petitioner's role in the murder. The testimony of several witnesses and other evidence, such as the presence in petitioner's residence of the cord used to strangle the victim, all corroborated Wilhelm's testimony. This Court fully concurs with the detailed analysis which the state appellate court used in reaching the same conclusion. *See, People v. Dowd,* 57 Ill.Dec. at 222–223, 428 N.E.2d at 902–3.

That the corroborating evidence was conclusive in establishing Wilhelm's credibility is demonstrated by the fact that the jurors used it to reject two of the defense counsel's other successfully executed attempts to impeach Wilhelm. First, the jury had been made aware that Wilhelm was a convicted felon. Second, the defense had clearly established that Wilhelm had told the police two vastly differing stories, one inculpating petitioner and the other exculpating her. Despite these challenges to Wilhelm's credibility, the jury believed his

story. The strength of the evidence substantiating Wilhelm's testimony overcame any doubts as to his honesty on this occasion. Even if the defense had been able to fully explore the terms of the plea bargain and Wilhelm's possible motives for testifying against petitioner, it is entirely unlikely that a reasonable doubt would have been raised in the minds of the jurors that Wilhelm was lying.

The Court also notes in passing that petitioner's case is not one in which the jury was confronted with a key witness' flat denial, and nothing more, of a plea agreement. Here, petitioner's counsel did successfully elicit testimony from Wilhelm that his sentence was conditioned on an affirmation of one of the two conflicting stories told to the police. Although this testimony was later obscured, and perhaps totally distorted by the prosecution's misconduct, the fact is that the jury was not completely unaware of at least the possibility that Wilhelm's testimony may have been motivated by the hope for leniency.

Petitioner relies on four cases that apply the *Napue* test to facts remarkably similar to those in the instant case, and which result in the granting of habeas writs. All four cases, however, are dissimilar to the case at bar in one essential respect: each involves the very real possibility that knowledge by the jury of the key witness' plea bargain would have affected the jury's verdict.

In *United States ex rel. Wilson v. Warden*, 538 F.2d 1272 (7th Cir.1976), the entire case rested on the credibility of the two key witnesses, both of whom had entered into plea agreements regarding their testimony. There was virtually no evidence in the record which would lend weight to their stories. Hence, the jury might well have disbelieved them if the existence of the plea agreements had not been perjuriously denied. Likewise, in *United States v. Bigeleisen*, 625 F.2d 203 (8th Cir.1980), the court found that the record provided the jury with no evidence to evaluate the key witness' credibility. The testimony of other witnesses not only did not corroborate

his story, it actually contradicted it. Thus, the government's knowing use of the witness' perjured denial of a plea bargain was likely to have affected the jury's evaluation of his honesty.

*DuBose v. LeFevre*, 619 F.2d 973 (2nd Cir.1980) and *United States ex rel. Washington v. Vincent*, 525 F.2d 262 (2nd Cir. 1975) are inapposite for basically the same reasons as *Wilson* and *Bigeleisen*. With credibility of a key witness a major issue in all four cases, and, unlike the case at bar, virtually *no* independent basis for weighing the witness' honesty, it was reasonably likely that a perjured denial of a plea bargain could have affected the jury's judgment. These four cases illustrate by way of contrast why the facts of petitioner's case do not provide a basis for a writ of habeas corpus.

### B. *Denial of Petitioner's Sixth Amendment Right to Confrontation*

■ The U.S. Supreme Court has held that "a denial of cross-examination without waiver ... would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." *Alford v. U.S.*, 282 U.S. 687, 692–94, 51 S.Ct. 218, 219–220, 75 L.Ed. 624 (1931); *Smith v. Illinois*, 390 U.S. 129, 132, 88 S.Ct. 748, 750, 19 L.Ed.2d 956 (1968); *Davis v. Alaska*, 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974). Petitioner argues that the trial court denied her the right to effectively cross-examine Wilhelm by sustaining the prosecution's objections to questions which, if allowed, might have revealed a motive on the part of Wilhelm to testify falsely. If, in fact, the trial court did completely block defendant's inquiry into the subject of plea bargains, then unquestionably, reversible error occurred. "[C]ross examination for the purpose of [showing bias] *is a right*. [Emphasis in original.] ... This right to cross-examine a witness about a pending charge against him to show bias cannot be defeated merely because there is other evidence that the witness is biased; nor can it be defeated by a claim of lack of prejudice." *People v.*

*Kellas,* 72 Ill.App.3d 445, 28 Ill.Dec. 9, 389 N.E.2d 1382, 1390 (1st Dist.1979).

The fatal infirmity in petitioner's case, however, is that the trial judge did *not* cut off defense counsel's plea bargain related inquiry into Wilhelm's possible bias. Based on a careful reading of the trial record, this Court finds that it was defense counsel, itself, who voluntarily abandoned this line of questioning. True, the trial court had sustained two objections by the prosecution relating to plea bargains. But then, as defendant tried a third tack, still with the same objective of exposing Wilhelm's bias, the court *overruled* the prosecution's objection, saying, "Let him go ahead. He can answer." As the defense counsel once again zeroed in on the sensitive area of a negotiated plea, the state once again objected on grounds of relevancy. This time the trial judge responded, "No question pending." At this point, the defense counsel simply abandoned his impeachment effort, without any further attempt to rephrase his question, to ask the judge for clarification of his comment, or to argue the point. As did the Illinois Appellate Court, this Court finds the record devoid of anything that shows that the trial court denied cross-examination. *People v. Dowd,* 57 Ill.Dec. at 224, 428 N.E.2d at 904.

Petitioner has called this Court's attention to *Chavis v. No. Carolina,* 637 F.2d 213 (4th Cir.1980), in which the trial court's refusal to let defense counsel pursue a line of bias-related questioning on a key witness' plea bargain resulted in the granting of a writ of habeas corpus. But the trial judge's unequivocal and repeated sustainings of prosecution objections, 637 F.2d nn. 11 and 12 at 220–21, distinguishes *Chavis* from the instant case.

In sum, petitioner suffered no violation of her Sixth Amendment right to confrontation by virtue of the cessation of her cross-examination of Wilhelm.

## C. *Denial of Petitioner's Sixth Amendment Right to Effective Assistance of Counsel*

■ Petitioner asserts that the representation afforded her at trial was ineffective as demonstrated by defense counsel's repeated demonstration of ignorance of rules of evidence and the failure to: (1) bring forward critical impeaching evidence; (2) object to grossly improper questions and argument by the prosecutor; and (3) correct perjured testimony or tender a necessary instruction.

In the Seventh Circuit, in order to prevail in a habeas corpus petition asserting want of effective legal assistance in a criminal case, the petitioner must prove that counsel's assistance failed to meet a "minimum standard of professional representation." *United States ex rel. Williams v. Twomey,* 510 F.2d 634, 641 (7th Cir.1975); *United States v. Trapnell,* 638 F.2d 1016, 1027 (7th Cir.1980). "A minimum standard of professional representation does not mean representation free of questionable tactical decisions or even what hindsight might suggest were mistakes. It means representation without serious prejudicial blunders which have foreseeable adverse consequences." *Guzzardo v. Bengston,* 643 F.2d 1300, 1305 (7th Cir.1981). "This, in turn, requires an examination of the totality of the circumstances in the particular case." *United States ex rel. Heral v. Franzen,* 667 F.2d 633 (7th Cir.1981). "In considering a claim of ineffective assistance of counsel we start with a presumption that he was conscious of his duties to his clients and that he sought conscientiously to discharge those duties. The burden of demonstrating the contrary is on his former clients." *United States v. Fleming,* 594 F.2d 598 (7th Cir.1979); *United States ex rel. Cyburt v. Rowe,* 638 F.2d 1100 (7th Cir.1981). Finally, assuming that a petitioner has met his or her burden of establishing failure to meet a minimum standard of professional representation, the court must still determine "whether sufficient harm could have flowed from that denial to justify granting a habeas writ." *United States ex rel. Cosey v. Wolff,* 526 F.Supp. 788, 791 (N.D.Ill.1981), (*citing United States v. Morrisson,* 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564

(1981)), *rev'd. on other grounds,* 682 F.2d 691 (7th Cir.1982).

The standard for evaluating the representation of criminal defense counsel adopted by the Seventh Circuit is higher than that applied by the state courts in Illinois. The Illinois standard for *retained* counsel provides that the defendant has been denied a fair trial only if counsel's representation served to reduce the proceedings to a "farce or sham." *People v. Torres,* 54 Ill.2d 384, 297 N.E.2d 142 (1973). The Illinois standard for *appointed* counsel is somewhat higher: actual incompetence of counsel resulting in substantial prejudice without which the outcome probably would have been different. *People v. Virgil,* 54 Ill.App.3d 682, 12 Ill.Dec. 451, 370 N.E.2d 74 (1977).

The Illinois Appellate Court applied the *Virgil* standard in considering petitioner's allegation of ineffective assistance of counsel, and found that petitioner's claim was groundless. Its conclusion rested substantially on Illinois case law.

Petitioner correctly argues that this Court must apply the more stringent "minimum standard of professional responsibility." *United States ex rel. Williams v. Twomey,* 510 F.2d 634, 638 (7th Cir.1975). Even applying the *Twomey* standard, however, this Court finds that petitioner in the instant case suffered no violation of her Sixth Amendment right to effective assistance of counsel.

First, the record does not support petitioner's allegation of her attorney's repeated disregard of the rules of evidence. The most grievous instance of alleged ignorance to which petitioner points is counsel's failure to lay an adequate foundation for impeaching Wilhelm's testimony by means of his earlier conflicting written statement given to police. The record does indicate that defense counsel may have been maladroit in laying the proper foundation for impeachment by means of a prior inconsistent statement, both in their first attempt to cross-examine Wilhelm directly about Wilhelm's earlier inconsistent testimony, and their subsequent attempt to bring out the full prior inconsistent statement of Wilhelm through the testimony of a court reporter called as a witness for that purpose. But the fact remains that defense counsel did ultimately succeed in eliciting from Wilhelm a summary of Wilhelm's prior inconsistent statement to police. The summary, though somewhat truncated, was sufficient to thoroughly impeach Wilhelm. That petitioner's trial counsel did not put before the jury any of the additional inconsistent details in Wilhelm's prior inconsistent statement appears to have been a tactical decision. This Court will not engage in speculation or hindsight as to whether this decision by counsel was merely unwise. *Guzzadro v. Bengston,* 643 F.2d at 1305. Whether or not the impeachment was as devastating as it could have been, it served its central purpose, and hence, any strategic errors here were not seriously prejudicial. *Guzzadro, supra.*

Second, petitioner argues that her trial counsel failed to object to an extensive series of questions directed to her by the prosecution, in which she was asked whether certain witnesses had been telling the truth. As noted by the Illinois Appellate Court, "it is highly improper for a prosecutor to ask a defendant's opinion of the veracity of other witnesses," *People v. Dowd,* 428 N.E.2d at 904, *citing People v. Riley,* 63 Ill.App.3d 176, 19 Ill.Dec. 874, 379 N.E.2d 746 (1978). But the appellate court could not conclude that "[i]n the face of clear evidence of guilt, ... the concededly improper questions of which [petitioner] complains could have altered the outcome of her lengthy trial." 57 Ill.Dec. at 224, 428 N.E.2d at 904. This Court, upon examining the totality of the circumstances in this case, *United States ex rel. Heral v. Franzen,* 667 F.2d 633 (7th Cir.1981), agrees with the state court. Petitioner has not met her burden of showing serious prejudice.

For the same reasons, this Court deems inconsequential the remarks made by the prosecutor during his closing arguments, set out fully in *People v. Dowd,* 57 Ill.Dec. at 226–227, 428 N.E.2d at 906–8. The law

in Illinois, as stated by the state appellate court, holds that even closing comments which might be improper are not grounds for setting aside a conviction, unless they were a material factor in the jury's determination. *Id.* The relevant test is whether, considering the entire closing arguments of both sides, and placing allegedly inflammatory remarks in proper context, the jury might have reached a different result had the remarks not been made. *Id.* 57 Ill.Dec. at 222–223, at 906–7. In light of Illinois law, petitioner's trial counsel might well have made the strategic choice to refrain from objecting to the prosecution's remarks in order to avoid the risk of annoying the jury unnecessarily. In any case, even if defense counsel had objected to portions of the State's closing argument, and even if the trial court had sustained such objections, this Court concludes that the jury would nevertheless have found petitioner guilty.

Third, petitioner contends that her trial counsel improperly failed to tender a necessary jury instruction that would have informed the jury that one Linda Sanz, another key witness, could be considered an accomplice, and that consequently the jury should consider her testimony with caution. There is no question that an accomplice instruction could have been given, and the proper language for it, found in the Illinois Pattern Jury Instructions. But, as the Illinois Appellate Court stated, "instructions to a jury must be read and considered in the context of the particular case, and must be considered as a whole. When the instructions as a whole correctly and fully instruct the jury, error as to an individual instruction is at most harmless." *People v. Dowd,* 57 Ill.Dec. at 225, 428 N.E.2d at 905. This Court agrees with the state court that in petitioner's case, witness Sanz was extensively questioned about her own fear of prosecution for her part in the murder. Defense counsel asked the jury to evaluate Sanz as an unbelievable witness. Finally, although the jury was not given a specific accomplice instruction with respect to Sanz, it was given a general instruction that it

had a duty to evaluate the credibility of all witnesses. *Id.*

Petitioner finally asks this Court to consider, not merely the prejudicial effects of each instance of defense counsel's alleged failure to meet its minimum professional standard in isolation, but to evaluate the cumulative harm flowing therefrom. This Court recognizes that there may be instances where the aggregate harm resulting from counsel's tactical mistakes may be greater than the sum of its parts. But in the instant case, this is not so. Taken together or individually, the instances that petitioner claims demonstrate ineffective assistance of counsel are insufficient to meet her burden of proof.

### *Conclusion*

The petitioner in the case at bar has, for the foregoing reasons, failed to present a claim entitling her to federal habeas corpus relief under 28 U.S.C. § 2254. Accordingly, the petition for a writ of habeas corpus is denied and respondents' motion for summary judgment is hereby granted.

IT IS SO ORDERED.